1   SUZANNE M. HANKINS (State Bar No. 157837)
2   JARLATH M. CURRAN (State Bar No. 239352)
    SEVERSON & WERSON
3   A Professional Corporation
    The Atrium
4   19100 Von Karman Ave., Suite 700
    Irvine, CA  92612
5   Telephone:  (949) 442-7110
6   Facsimile: (949) 442-7118

7   MARK D. LONERGAN (State Bar No. 143622)
    SEVERSON & WERSON
8   A Professional Corporation
    One Embarcadero Center, Suite 2600
9   San Francisco, CA  94111
10  Telephone:  (415) 398-3344
    Facsimile: (415) 956-0439

11
    Attorneys for Defendants
12  WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage)
    and U.S. BANK NATIONAL ASSOCIATION, as Trustee for Citigroup Mortgage
13  Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR9

14
                    UNITED STATES DISTRICT COURT
15
                  CENTRAL DISTRICT OF CALIFORNIA
16

17  MARGARET S. WISE, an individual       Case No. CV11-8586 CBM (PJWx)
                                          Hon. Consuelo B. Marshall
18              Plaintiff,                Ctrm. 2 - Spring Street

19      vs.
                                          **DEFENDANTS' NOTICE OF**
20                                        **MOTION AND MOTION TO**
    WELLS FARGO BANK, N.A.;               **DISMISS COMPLAINT PURSUANT**
21  WELLS FARGO HOME                      **TO FED. R. CIV. P. 12(b)(6);**
    MORTGAGE; U.S. BANK, N.A. AS          **MEMORANDUM OF POINTS AND**
22  TRUSTEE FOR CITIGROUP                 **AUTHORITIES**
23  MORTGAGE LOAN TRUST, INC.,
    MORTGAGE PASS-THROUGH                 **[Filed concurrently with Request for**
24  CERTIFICATES, SERIES 2006-AR9;        **Judicial Notice]**
    and DOES 1 - 10, inclusive,
25                                        Date:      January 23, 2012
                Defendants.               Time:      11:00 a.m.
26                                        Ctrm:      2
27
28                                        Complaint Filed:  October 17, 2011

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................8

II.     STATEMENT OF FACTS ........................................................9

III.    PLAINTIFF'S DECLARATORY RELIEF CLAIM FAILS ..........................9

    A.      Plaintiff's Challenge to U.S. Bank's Authority is Improper...............10

    B.      Plaintiff's Loan Securitization And Loan Pooling Theories Fail .......11

    C.      Production of The Note Is A Universally Discredited Theory ...........13

    D.      The Claims Are All Barred By the Doctrine of Tender.....................14

IV.     DEFENDANTS ARE NOT DEBT COLLECTORS .................................15

V.      PLAINTIFF STATES NO 15 U.S.C. §1641(g) CLAIM AGAINST
    U.S. BANK ....................................................................16

    A.      Plaintiff Has Not Been Damaged ........................................16

    B.      The Claim Fails Because The Omission Was Not A Material
    Disclosure .................................................................18

VI.     PLAINTIFF FAILS TO STATE A RESPA CLAIM ...............................18

    A.      Plaintiff's August 21, 2011 Letter is Not a QWR..........................18

    B.      Plaintiff Cannot Plead Damages .........................................20

VII.    PLAINTIFF HAS NO CLAIM UNDER BUS. & PROF. CODE
    SECTION 17200 ..............................................................21

    A.      Plaintiff States No Underlying Violation Of Law .........................21

    B.      Plaintiffs Cannot Allege Unfair Conduct under the UCL...................21

VIII.   PLAINTIFF'S CONTRACT CLAIMS FAIL .....................................22

IX.     CONCLUSION ................................................................24

# Table of Authorities

**Page(s)**

**CASES**

Agosta v. Astor,
   120 Cal.App.4th 596 (2004)......................................................................25

Aguilar v. Bocci,
   39 Cal.App.3d 475 (1974)........................................................................16

Anaya v. Advisors Lending Group,
   2009 WL 2424037 (E.D. Cal. Aug. 5, 2009) ........................................17

Andrew v. Ivanhoe Fin., Inc.,
   2008 WL 2265287 (E.D. Pa. 2008)........................................................22

Arnolds Mgmt. Corp. v. Eischen,
   158 Cal.App.3d 575 (1984)......................................................................16

Batt v. City and County of San Francisco,
   155 Cal. App. 4th 65 (2007).....................................................................11

Bell Atlantic Corp. v. Twombly,
   127 S.Ct. 1955 (2007) .............................................................................15

Benham v. Aurora Loan Servs.,
   2009 WL 2880232 (N.D. Cal. 2009).......................................................13

Bionghi v. Metro. Water Dist.,
   70 Cal.App.4th 1358 (1999).....................................................................25

Bouyer v. IndyMac Federal Bank,
   2009 WL 1765668 (N.D. Cal. June 18, 2009)........................................16

Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
   20 Cal.4th 163 (1999)..........................................................................23, 24

California Trust Co. v. Smead Investment Co.,
   6 Cal.App.2d 432 (1935)..........................................................................15

Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,
   2 Cal.4th 342 (1992)................................................................................25

City of Cotati v. Cashman,
   29 Cal.4th 69 (2002)................................................................................11

Committee on Children's Television v. General Foods Corp.
   (1983) 35 Cal.3d 197 ..............................................................................24

*Consumer Solutions REO, LLC v. Hillery,*
   658 F.Supp.2d 1002 (N.D. Cal. 2009)..........................................................21

*Dean Witter Reynolds, Inc. v. Sup. Ct.*
   (1989) 211 Cal.App.3d 758 .......................................................................24

*DeVary v. Countrywide Home Loans, Inc.,*
   — F. Supp. 2d —, 2010 WL 1257647 (D. Minn. 2010) ..............................20

*Fontenot v. Wells Fargo,*
   198 Cal.App.4th 256..................................................................................15

*Fonua v. First Allied Funding,*
   2009 WL 816291 (N.D. Cal. 2009) .............................................................22

*Gamboa v. Trustee Corps,*
   2009 WL 656285 (N.D. Cal. 2009) .............................................................15

*Glue-Fold, Inc. v. Slautterback Corp.,*
   82 Cal.App.4th 1018 (2000) ......................................................................11

*Gomes v. Countrywide,*
   192 Cal.App.4th 1149 (2011) ...............................................................12, 13

*Guz v. Bechtel Nat'l, Inc.,*
   24 Cal.4th 317 (2000)................................................................................25

*Hutchinson v. Del. Sav. Bank, FSB,*
   410 F.Supp.2d 374 (D.N.J. 2006)..............................................................22

*I.E. Associates v. Safeco Title Ins. Co.,*
   39 Cal.3d 281 (1985) ...........................................................................12, 24

*In re Si-Va Tech., Inc.,*
   35 Fed.Appx. 681 (9th Cir. 2002) ..............................................................17

*Jones v. Select Portfolio Serv., Inc.,*
   2008 WL 1820935 (E.D. Pa. 2008).............................................................22

*Karlsen v. American Sav. & Loan Ass'n.,*
   15 Cal.App.3d 112 (1971) .....................................................................16, 17

*Kearn v. Ford Motor Company,*
   567 F.3d 1120 ...........................................................................................24

*Kim v. Sumitomo Bank,*
   17 Cal.App.4th 974, 21 Cal.Rptr.2d 834 (1993) .........................................25

*Krantz v. BT Visual Images, L.L.C.,*
   89 Cal.App.4th 164 (2001) ........................................................................23

Notice of Motion & Motion to Dismiss
Case No. CV11-8586 CBM (PJWx)

*Lane v. Vitek Real Estate Industries Group,*
    713 F.Supp.2d 1092 (E.D. Cal. 2010) .................................................................... 12, 13

*McDonald v. John P. Scripps Newspaper*
    (1989) 210 Cal.App.3d 100 .................................................................................... 24

*Meetz v. Mohr,*
    141 Cal. 667 (1904) ............................................................................................... 16

*Mitsui Mfrs. Bank v. Super. Ct.,*
    212 Cal.App.3d 726 (1989) .................................................................................... 25

*Moeller v. Lien,*
    25 Cal.App.4th 822 (1994) ..................................................................................... 12

*MorEquity, Inc. v. Naeem,*
    118 F.Supp.2d 885 (N.D. Ill. 2000) ....................................................................... 21

*People v. Duz-Mor Diagnostic Lab., Inc.,*
    68 Cal.App.4th 654 (1998) ..................................................................................... 23

*Perry v. Stewart Title Co.,*
    756 F.2d 1197 (5th Cir. 1985) ................................................................................ 17

*Pettie v. Saxon Mortgage Servs.,*
    2009 WL 1325947 (W.D. Wash. 2009) .................................................................. 21

*Phillips v. Bank of Am. Corp.,*
    2010 WL 1460824 (N.D. Cal. 2010) ...................................................................... 21

*Putkkuri v. ReconTrust Co.,*
    2009 WL 32567 (S.D. Cal. 2009) ........................................................................... 15

*Reynoso v. Paul Fin., LLC,*
    2009 WL 3833298 (N.D. Cal. 2009) ...................................................................... 22

*Saldate v. Wilshire Credit Corp.,*
    711 F.Supp.2d 1126 (E.D. Cal. Feb. 12, 2010) ...................................................... 18

*Shimpones v. Stickney,*
    219 Cal. 637 (1934) ............................................................................................... 16

*Singh v. Wash. Mut. Bank,*
    2009 WL 2588885 (N.D. Cal. 2009) ...................................................................... 22

*Sondel v. Arnold,*
    2 Cal.2d 87 (1934) ................................................................................................. 17

*Swanson v. EMC Mortg. Corp.,*
    2009 WL 3627925 (E.D. Cal. 2009) ....................................................................... 22

*Tina v. Countrywide,*
    2008 WL 4790906 (S.D. Cal. 2008)........................................................................16, 21

*U.S. Cold Storage v. Great Western Savings & Loan Ass'n.,*
    165 Cal.App.3d 1214 (1985)....................................................................................16

*Walker v. Equity 1 Lenders Group,*
    2009 WL 1364430 (S.D. Cal. 2009)..........................................................................21

**STATUTES**

12 C.F.R. § 226.23..................................................................................................20

12 U.S.C. §2605.............................................................................................20, 21, 22

15 U.S.C. §1638....................................................................................................20

15 U.S.C. §1640....................................................................................................20

15 U.S.C. §1641..................................................................................................18, 19

15 U.S.C. §1692..................................................................................................17, 18

Civil Code §1095...................................................................................................23

Civil Code § 2924..........................................................................................12, 15, 16

Civ. Code § 2934...................................................................................................14

Cal. Code Civ. Proc. § 1061......................................................................................11

California Penal Code §532(f)(a)(4) ............................................................................23

Bus. & Prof. Code §17200.................................................................................10, 23, 24

**OTHER AUTHORITIES**

10 Miller & Starr,
    *California Real Estate, Deeds of Trust* (3rd Ed. 2010) § 10:38 ........................................14

F.R.C.P. Rule 12(b)(6) ..............................................................................................9

F.R.C.P. Rule 8(a) ..................................................................................................15

F.R.C.P. Rule 9......................................................................................................24

**PLEASE TAKE NOTICE** that on January 23, 2012, at 11:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Consuelo B. Marshall in Courtroom 2 of the above-entitled court at 312 N. Spring Street, Los Angeles, California, Defendants, WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage)[1] and U.S. BANK NATIONAL ASSOCIATION, as Trustee for Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR9 (collectively, "Defendants"), will, and hereby do, move to dismiss Plaintiff's Complaint and each of its counts.

Defendants bring this motion pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the Complaint fails to allege any claim on which relief may be granted.

The motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the complaint, the amended complaint, the records on file in this action, and any further briefs, evidence, authorities, or argument presented at or before the hearing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3.

DATED:  November 14, 2011

SEVERSON & WERSON
A Professional Corporation


By: *Jarlath M. Curran II*
     SUZANNE M. HANKINS
     JARLATH M. CURRAN
     Attorneys for Defendants
     WELLS FARGO BANK, N.A.
     (erroneously sued as Wells Fargo
     Home Mortgage) and U.S. BANK
     NATIONAL ASSOCIATION, as
     Trustee for Citigroup Mortgage
     Loan Trust Inc., Mortgage Pass-
     Through Certificates, Series 2006-
     AR9

---

[1]     Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's complaint seeks to challenge a pending foreclosure sale based on nothing more than baseless accusations and rejected legal theories.

Primarily, Plaintiff claims that the subject loan's assignment to U.S. Bank is defective because (1) the assignment did not comply with the applicable pooling agreement; (2) U.S. Bank is not in possession of the original note; and (3) the individual that signed the assignment was not authorized to do so.  These accusations fail as a matter of law.  First, a recent California decision precludes a borrower from seeking a judicial determination regarding a lender's authority to nonjudicially foreclose pursuant to a deed of trust.  Second, the "produce the note" theory has been resoundingly rejected by the Courts.  Third, Plaintiff's allegations are simply unsupported by actual facts.

Plaintiff moves on to allege a series of statutory violations under the Truth in Lending Act, Real Estate Settlement Procedures Act, Fair Debt Collection Practices Act and Bus. & Prof. Code §17200.  However, Plaintiff's factual allegations neither provide support for a violation nor resulting damages.

Finally, Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing are based on Defendants' purported misapplication of loan payments.  But, Plaintiff admits that she has not made a payment since 2008.  Plaintiff cannot allege improper application of payments that she never made.  Moreover, the underlying loan documents authorize Defendants to pursue nonjudicial foreclosure if Plaintiff defaults on the subject loan.  Therefore, Plaintiff's contract claims fail.

Based on the foregoing, Defendants respectfully request that the Court grant their motion to dismiss with prejudice.

## II.   STATEMENT OF FACTS

On or about June 21, 2006, Plaintiff purchased the real property located at 2009 Ernest Ave., Redondo Beach, California 90278 (the "Property"). (Grant Deed, Request for Judicial Noticed filed concurrently herewith ("RJN"), Ex. A.) To fund this purchase, Plaintiff obtained a $940,000 purchase-money mortgage loan from Wells Fargo Bank, N.A. (Compl., ¶¶1, 15.) Plaintiff's payment obligations under the Loan are secured by a deed of trust recorded against the Property. (Compl., ¶¶1, 15; Deed of Trust, RJN, Ex. B.)  Wells Fargo's beneficial interest in the Loan was subsequently assigned to U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Mortgage Pass-Through Certificates, Series 2006-AR9 ("U.S. Bank"). (Compl., ¶26; Assignment of Deed of Trust, RJN, Ex. C.)  Wells Fargo currently services the Loan on U.S. Bank's behalf. (Compl., ¶24.)

In 2008, Plaintiff defaulted on her Loan payments. (Compl., ¶28.)  As a result, foreclosure proceedings were initiated against the Property.  A notice of default was recorded on March 9, 2010. (Notice of Default, RJN, Ex. D.)

## III.   PLAINTIFF'S DECLARATORY RELIEF CLAIM FAILS

The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject. *City of Cotati v. Cashman*, 29 Cal.4th 69, 79 (2002).  Declaratory relief is not an independent cause of action, but instead a form of equitable relief. *Batt v. City and County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007).  Such relief is permitted when necessary or proper. Code of Civ. Proc. §1061.  Equitable remedies "are dependent upon a substantive basis for liability, [and] have no separate viability." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3 (2000).

Plaintiff's first cause of action for declaratory relief seeks a Court declaration that U.S. Bank is not authorized to enforce the subject deed of trust.  However, the basis for this request is nothing more than defective legal theories that have been

1  rejected by the Courts.  Therefore, Plaintiff's first cause of action should be

2  dismissed with prejudice.

3        **A.    Plaintiff's Challenge to U.S. Bank's Authority is Improper**

4        Civil Code Sections 2924 through 2924k "provide a comprehensive

5  framework for the regulation of a nonjudicial foreclosure sale pursuant to a power

6  of sale contained in a deed of trust." *Moeller v. Lien*, 25 Cal.App.4th 822, 830

7  (1994).  "These provisions cover every aspect of exercise of the power of sale

8  contained in a deed of trust." *I.E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d

9  281, 285 (1985).  "The purposes of this comprehensive scheme are threefold:  (1) to

10  provide the creditor/beneficiary with a quick, inexpensive and efficient remedy

11  against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful

12  loss of the property; and (3) to ensure that a properly conducted sale is final

13  between the parties and conclusive as to a bona fide purchaser." *Moeller v. Lien,*

14  *supra*, 25 Cal.App.4th at p. 830.  "Because of the exhaustive nature of this scheme,

15  California appellate courts have refused to read any additional requirements into the

16  non-judicial foreclosure statute." *Lane v. Vitek Real Estate Industries Group*, 713

17  F.Supp.2d 1092, 1098 (E.D. Cal. 2010); *see also Moeller v. Lien, supra*, 25

18  Cal.App.4th at p. 834 ["It would be inconsistent with the comprehensive and

19  exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate

20  another unrelated cure provision into statutory nonjudicial foreclosure

21  proceedings."].)

22        Notwithstanding this exhaustive statutory framework, Plaintiff initiated this

23  litigation to challenge the foreclosure proceedings on the grounds that Defendants

24  lack authority to foreclose.  (Compl., ¶46.)  The Court in *Gomes* was presented

25  with the identical argument.[2]  The Court immediately rejected Gomes's contention:

26  _____

27  [2]    Gomes alleged that he didn't know the identity of the note's beneficial owner because he
   believed that his originating lender sold it on the secondary mortgage market.  On information
   and belief, Gomes then alleged that the person or entity that initiated the foreclosure process was

28  not the note's rightful owner, nor acting with the rightful owner's authority. *See Gomes v.
   Countrywide*, 192 Cal.App.4th 1149, 1152 (2011).

> By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated. *Gomes v. Countrywide*, 192 Cal.App.4th 1149, 1154 (2011).

The Court later concluded, "nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized and we see no ground for implying such an action." *Id., citing Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal.4th 592, 596 (2010). The instant case is no different than *Gomes*. Allowing it to proceed, "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Id.*

## B.   Plaintiff's Loan Securitization And Loan Pooling Theories Fail

Plaintiff claims that the Loan's assignment to U.S. Bank violates the terms of the applicable Pooling and Servicing Agreement ("PSA") and, therefore, U.S. Bank has no valid interest in the Loan. (Compl., ¶18). Plaintiff moves on to imply that the securitization of his promissory note somehow invalidates the initiation of the foreclosure proceedings. (Compl., ¶18.) The argument appears to be something to the effect of, because the promissory note was allegedly not properly transferred to the securitized trust, Plaintiff, ***who received $940,000 to purchase a house in Redondo Beach*** (RJN, Ex. A), does not have to pay that money back to anyone. This is incorrect.

"The argument that parties lose their interest in a loan when it is assigned to a trust pool [has] been rejected by many district courts." *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010); citing *Benham v. Aurora Loan Servs.*, 2009 WL 2880232, *3 (N.D. Cal. 2009). Therefore, Plaintiff's

1  implication that securitization of his promissory note somehow invalidates the

2  initiation of the foreclosure proceedings is simply wrong.

3    Plaintiff's securitization theory is also defective because Plaintiff specifically

4  authorized that "[t]he Note or a partial interest in the Note (together with this

5  Security Instrument) can be sold one or more times without prior notice to

6  Borrower." (Deed of Trust, RJN, Ex. B, ¶20.) By signing the deed of trust,

7  Plaintiff acknowledged and agreed that the note and deed of trust could be sold

8  numerous times without prior notice to him.

9    Plaintiff's attempt to invalidate the assignment to U.S. Bank on the theory

10  that the Loan was transferred to U.S. Bank in violation of the PSA is both factually

11  and legally defective. First, Plaintiff is neither a party nor a third party beneficiary

12  to the PSA. Therefore, she has no standing to seek relief based on a purported

13  violation of that agreement.

14    Second, the basis upon which Plaintiff claims that the Loan's transfer was

15  untimely is the date of the assignment of the deed of trust was executed. (Compl.,

16  ¶¶18, 26.) However, the date of the assignment is irrelevant. The transfer of a

17  promissory note is perfected against third parties on the execution and delivery of

18  an assignment of the note (not an assignment of the deed of trust) to the transferee.

19  10 Miller & Starr, *California Real Estate, Deeds of Trust* (3rd Ed. 2010) § 10:38, p.

20  128 (citations omitted). "Because the lien of the trust deed is merely an incident of

21  the debt, the assignment by endorsement and delivery of the promissory note

22  accomplishes the transfer of the security without the necessity of a formal

23  assignment of the trust deed itself." *Id.* As such, an assignment of the deed of trust

24  need not be recorded to be effective. Recordation of such assignments merely

25  provides constructive notice to third persons as to the current beneficiary of the

26  loan. *Id.* at § 10:39; *see also* Civ. Code § 2934.

27    Finally, Plaintiff's self-serving claim that the individual identified on the

28  assignment of deed of trust, Carla Naughton, was not an employee of Wells Fargo

1  and therefore was not authorized to execute the assignment fails to satisfy Rule 8(a)

2  of Federal Civil Procedure as it is completely unsupported by facts. (Compl., ¶26).

3  Beyond "labels and conclusions," Plaintiff provides no support for her claim that

4  Ms. Naughton was not an authorized Wells Fargo employee agent. *Bell Atlantic*

5  *Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to

6  provide the 'grounds' of their 'entitlement to relief' requires more than labels and

7  conclusions, and a formulaic recitation of the elements of a cause of action will not

8  do... [F]actual allegations must be enough to raise a right to relief above the

9  speculative level.")

10      Furthermore, Plaintiff is neither a victim of nor has she been damaged by the

11  allegedly fraudulent actions of Ms. Naughton.  Specifically, if Ms. Naughton was

12  not authorized to sign on Wells Fargo's behalf, it is Wells Fargo that is the victim,

13  not Plaintiff, as Wells Fargo would have suffered the loss of its interest in the Deed

14  of Trust.  *See, e.g., Fontenot v. Wells Fargo*, 198 Cal.App.4th 256, 272 ("If MERS

15  indeed lacked authority to make the assignment, the true victim was not plaintiff

16  but the original lender, which would have suffered the unauthorized loss of a $1

17  million promissory note").

18  **C.  Production of The Note Is A Universally Discredited Theory**

19      Plaintiff argues that it is unclear who the beneficiary of the note/deed of trust

20  is, so the foreclosing beneficiary should be required to produce the original

21  promissory note.  (Compl., ¶48.)  California courts have never accepted this theory.

22  *See, e.g., California Trust Co. v. Smead Investment Co.*, 6 Cal.App.2d 432, 435

23  (1935); *Gamboa v. Trustee Corps*, 2009 WL 656285, *4 (N.D. Cal. 2009) ("the

24  statutory framework governing non-judicial foreclosures contains no requirement

25  that the lender produce the original note to initiate the foreclosure process.");

26  *Putkkuri v. ReconTrust Co.*, 2009 WL 32567, *2 (S.D. Cal. 2009)  ("Pursuant to

27  section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has

28  the right to initiate the foreclosure process . . .  Production of the original note is not

1   required to proceed with a non-judicial foreclosure."); *Tina v. Countrywide,*

2   2008 WL 4790906, *8 (S.D. Cal. 2008) ("Cal. Civ. Code §2924 outlines the

3   requirements for nonjudicial foreclosures in California, and does not include

4   providing the original note prior to the sale." Plaintiff's assertions to this effect are

5   meritless.

6       **D.**    **The Claims Are All Barred By the Doctrine of Tender**

7       If a borrower who has defaulted in repaying a loan asks the court to exercise

8   its equitable powers to set aside a foreclosure, he/she must first "do equity."

9   *Arnolds Mgmt. Corp. v. Eischen,* 158 Cal.App.3d 575, 577 (1984); *Meetz v. Mohr,*

10  141 Cal. 667, 673 (1904) ("One who seeks equity must do equity"). Likewise, "[i]t

11  is settled in California that a mortgagor cannot quiet his title against the mortgagee

12  without paying the debt secured." *Shimpones v. Stickney,* 219 Cal. 637, 649 (1934);

13  *Aguilar v. Bocci,* 39 Cal.App.3d 475, 477 (1974) (trustor is unable to quiet title

14  "without discharging his debt").

15      Under California law, the tender rule applies even where the challenged

16  foreclosure has not yet occurred. Courts have consistently rejected attempts to

17  enjoin *pending* foreclosure sales where borrowers refuse to comply with the tender

18  rule. *See, Bouyer v. IndyMac Federal Bank,* 2009 WL 1765668, at *2 (N.D. Cal.

19  June 18, 2009) (denying request for injunctive relief to stop pending foreclosure

20  where "Plaintiffs have neither pled nor offered anything to suggest a tender to pay

21  their debt") (citing *Karlsen v. American Sav. & Loan Ass'n.,* 15 Cal.App.3d 112,

22  117-18 (1971)); *Chavez v. Recontrust Co.,* 2008 WL 5210893, at *6 (E.D. Cal.

23  Dec. 11, 2008) (denying request to enjoin foreclosure sale because the "law is long-

24  established that a trustor or his successor must tender the obligation in full as a

25  prerequisite to challenge the foreclosure sale") (quoting *U.S. Cold Storage v. Great*

26  *Western Savings & Loan Ass'n.,* 165 Cal.App.3d 1214, 1222 (1985)); *Vargas v.*

27  *Recontrust Co.,* 2008 WL 510557, at *6 (E.D. Cal. Dec. 2, 2008) (same).

28

1    Furthermore, under California law, an offer to tender is an empty offer where

2    a plaintiff has no ability to do so.  *See, Anaya v. Advisors Lending Group*, 2009 WL

3    2424037, at *10 (E.D. Cal. Aug. 5, 2009) ("Simply put, if the offeror 'is without the

4    money necessary to make the offer good and knows it' the tender is without legal

5    force or effect.") (quoting *Karlsen*, 92 Cal.Rptr. at 854); *see also, In re Si-Va Tech.,*

6    *Inc.*, 35 Fed.App. 681, 684 (9th Cir. 2002) ("As to the alleged tender of May 6,

7    1998, it too must fail.  An offer of performance is of no effect if not made in good

8    faith with intent and ability to perform.  Therefore, 'insincere' and 'evasive' offers

9    are not effective tenders.") (citing *Sondel v. Arnold*, 2 Cal.2d 87, 90 (1934).

10    Plaintiff has failed to tender or allege her financial ability to tender the

11    amounts necessary to support her claims.  Therefore, she lacks standing to

12    challenge the pending foreclosure sale.

13    **IV.    DEFENDANTS ARE NOT DEBT COLLECTORS**

14    Plaintiff's second cause of action under the Fair Debt Collection Practices

15    Act ("FDCPA") fails for two reasons.

16    First, the FDCPA only regulates the activities of "debt collectors."  A "debt

17    collector" is any person who uses any instrumentality of interstate commerce in any

18    business whose principal purpose is either debt collection or enforcement of

19    security interest to regularly collect or attempt to collect debts owed or asserted to

20    be owed to another.  15 U.S.C. §1692(a).  The FDCPA specifically excludes

21    *creditors collecting their own consumer debts* and the creditor's officers or

22    employees collecting debts on the creditor's behalf.  15 U.S.C. §1692a(6).

23    Here, U.S. Bank, as the loan's current beneficiary, cannot be considered a

24    "debt collector" under the FDCPA because it is not collecting a debt on behalf of

25    another.  15 U.S.C. §1692a(6).  Likewise, Wells Fargo is not a "debt collector" as it

26    is the company servicing the subject mortgage loan.  *Perry v. Stewart Title Co.,*

27    756 F.2d 1197, 1208 (5th Cir. 1985) (*citing* S.Rep. No. 95-382, 95th Cong., 1st

28    Sess. 3, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698) (The

legislative history of section 1692a(6) indicates conclusively that a debt collector does not include a mortgage servicing company).  The only basis upon which Plaintiff claims that Defendants are considered a "debt collector" is her failed theories regarding the assignment of deed of trust discussed above.  (Compl., ¶59.)  Therefore, the FDCPA does not apply.

Furthermore, the only debt collection activity identified in the complaint is the pursuit of nonjudicial foreclosure.  However, nonjudicial foreclosure does not constitute debt collection under the FDCPA. *Saldate v. Wilshire Credit Corp.*, 711 F.Supp.2d 1126, 1132 (E.D. Cal. Feb. 12, 2010) (citing *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008)).

For these reasons, Plaintiff's FDCPA claim must be dismissed.

## V.   PLAINTIFF STATES NO 15 U.S.C. §1641(G) CLAIM AGAINST U.S. BANK

### A.   Plaintiff Has Not Been Damaged

15 U.S.C. §1641(g) requires an assignee of a mortgage loan to notify a borrower in writing of such transfer within 30 days of the transfer.  Plaintiff claims that U.S. Bank violated this statute by failing to provider her with notice of the Loan's transfer to U.S. Bank.  However, Plaintiff fails to identify any resulting damage.

Specifically, Plaintiff claims U.S. Bank violated the purpose of the statute, which "was enacted to assist borrowers in identifying who their purported lender is, so that they could contact them if they needed assistance saving their home." (Compl., ¶72.)  However, Plaintiff concedes to have been in communications with Wells Fargo, the Loan's servicer, since 2008 regarding modification.  Plaintiff even admits to several denials based on her failure to provide the requisite documentation and inability to afford the post-modification payment.  (Compl., ¶28.)  In other words, even assuming no notice of assignment was provided, Plaintiff was assisted in attempting to save her home from foreclosure.

1    Plaintiff continues by alleging that U.S. Bank's purported failure to provide

2  notice of the assignment has resulted in the Property's "unmarketability", damage

3  to Plaintiff's credit, Plaintiff's inability to determine where to send her monthly

4  payments and the possibility that multiple parties may enforce the debt.  This

5  alleged "damage" is simply unsubstantiated.

6    Whether or not Plaintiff was notified within 30 days of any assignment has

7  absolutely nothing to do with whether Plaintiff was making her payments under the

8  loan.  This is especially true in light of the fact that the payments are submitted to

9  the servicer of the loan, which is Wells Fargo, not U.S. Bank.  Likewise, Plaintiff

10  has not alleged, and cannot allege, that payments were returned to her or that there

11  is any confusion whatsoever as to where and to whom to submit payments under

12  this loan.  Any such allegation would be ridiculous because Wells Fargo has been

13  sued in this case as the servicer of the loan.

14    Plaintiff's "marketability" theory contends that "any buyer of Plaintiff's

15  home will find themselves in legal limbo, unable to know whether they can safely

16  buy Plaintiff's home or get title insurance." (Compl., ¶88.)  This claim is simply

17  ridiculous.  The public record shows U.S. Bank as the beneficiary under the Deed

18  of Trust and it is undisputed that Wells Fargo is the loan's servicer.  A potential

19  buyer will have no issues determining what amounts need to be tendered to payoff

20  the Loan.

21    Plaintiff's damaged credit is solely the result of her failure to make a

22  payment on the Loan since 2008.  (Compl., 28.)  Finally, the claim that another

23  entity "may" seek to enforce the Loan against Plaintiff fails as it is not ripe.

24    Plaintiff must plead actual damage in order to have a claim under 15 U.S.C.

25  §1641(g).  *Beall v. Quality Loan Service Corp*, 2011 WL 1044148, *6 (S.D. Cal.

26  2011).  As Plaintiff fails to do so, the Motion to Dismiss as to this claim must be

27  granted.

28

**B.   The Claim Fails Because The Omission Was Not A Material Disclosure**

Since the Truth in Lending Simplification Act of 1980, a consumer has been allowed a remedy under TILA only for a failure to provide specified "material disclosures." The only "material disclosures" that can lead to liability for damages or rescission under TILA are disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the 3-day right to rescind certain real estate-secured loans. *See* 15 U.S.C. §§1638 (a)(2)-(6), (9), 1640(a) (hanging paragraph); 12 C.F.R. § 226.23(a)(3) & n.48. As Plaintiff has not alleged any failure to provide any of these material disclosures, she has no TILA claim.

**VI.   PLAINTIFF FAILS TO STATE A RESPA CLAIM**

**A.   Plaintiff's August 21, 2011 Letter is Not a QWR**

Plaintiff claims that Wells Fargo violated RESPA by failing to respond to her August 21, 2011 letter, which Plaintiff identifies as a "Qualified Written Request" or "QWR." (Compl., ¶93-97, Ex. D.) However, Plaintiff's letter was not a valid QWR because it was not related to the servicing or servicing errors of the loan. To the contrary, Plaintiff's letter does nothing more than demand information related to the owner of the note and transfers or assignments of the note. (Compl., Ex. D.)

A request for information about who owns a loan or a vague inquiry as to application of payments that does not involve any alleged servicing errors does not constitute a valid QWR. As one court has explained, "RESPA does not require a servicer to respond to any question a borrower may ask—no matter how broad, vague, or far afield." *DeVary v. Countrywide Home Loans, Inc.*, — F. Supp. 2d —, 2010 WL 1257647, *9 (D. Minn. 2010). "'Under RESPA, loan servicers are only required to respond to any "qualified written request from the borrower … for information relating to the servicing of [his] loan…."' *Id.*, quoting 12 U.S.C. §2605(e)(1)(A).

1   The statute defines "servicing" as "receiving any scheduled periodic

2   payments from a borrower pursuant to the terms of any loan . . . and making the

3   payments of principal and interest and such other payments with respect to the

4   amounts received from the borrower as may be required pursuant to the terms of the

5   loan." 12 U.S.C. §2605(i)(3). A request about the ownership or any other loan

6   issue that has nothing to do with plaintiff's loan payments or whether the payments

7   were misapplied does not qualify as a RESPA QWR.[3] This claim fails because the

8   letter does not address loan servicing issues. (Compl., Ex. D.) Plaintiff has thus

9   failed to show that any of the named defendants had any duty under RESPA to

10  respond. *Tina v. Countrywide Home Loans, Inc.*, 2008 WL 4790906, *6 (S.D. Cal.

11  2008).

12      Furthermore, Plaintiff's alleged QWR was likewise insufficient to trigger a

13  response because it failed to provide "a statement of reasons for the belief of the

14  borrower, to the extent applicable, that the account is in error or . . . sufficient detail

15  to the servicer regarding other information sought by the borrower." 12 U.S.C.

16  §2605(1)(B)(ii); *see also Phillips v. Bank of Am. Corp.*, 2010 WL 1460824, *2

17  (N.D. Cal. 2010) (explaining that in order to constitute a QWR, a request "must

18  either include a statement of the reasons for the borrower's belief, to the extent

19  applicable, that the account is in error or provide sufficient detail to the servicer

20  regarding other information sought by the borrower."); *Pettie v. Saxon Mortgage*

21  *Servs.*, 2009 WL 1325947, *2 (W.D. Wash. 2009) ("RESPA § 2605(e)(1)(B)

22  clearly requires that a disputing party give specific 'reasons' for claiming that an

23  account is in error."); *Walker v. Equity 1 Lenders Group*, 2009 WL 1364430, *5

24  (S.D. Cal. 2009) ("qualified written request must ... include a statement of the

25
26  [3]     *Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1014 (N.D. Cal. 2009)
    (dismissing plaintiff's RESPA claim with prejudice after observing that the requirement "[t]hat a
    QWR must address the servicing of the loan, and not its validity, is borne out by the fact that
27  § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan");
    *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d 885, 901 (N.D. Ill. 2000) (borrowers' letter seeking
28  information about the validity of the loan and mortgage documents, but not inquiring about the
    status of their account balance did not relate to loan "servicing" and was not RESPA QWR).

1  reasons for the belief of the borrower that the account is in error."). The "request"

2  did not identify any alleged servicing errors. (Compl., Ex. D.) Rather, it makes

3  conclusory claims concerning the sales and transfers of mortgage servicing rights

4  and is purely a fishing expedition. *Id.*

5  **B.   Plaintiff Cannot Plead Damages**

6  A RESPA claim is also defective if it fails to show actual damage caused by

7  the alleged failure to respond to her QWR. To state a claim for §2605 relief, a

8  plaintiff must allege either a purported pattern or practice of violating the statute or

9  actual damage caused by the asserted violation. 12 U.S.C. §2605(f); *Fonua v. First*

10  *Allied Funding*, 2009 WL 816291, at *3 (N.D. Cal. 2009); *Jones v. Select Portfolio*

11  *Serv., Inc.*, 2008 WL 1820935, at *9-10 (E.D. Pa. 2008); *Andrew v. Ivanhoe Fin.,*

12  *Inc.*, 2008 WL 2265287, at *6 (E.D. Pa. 2008). Plaintiff does not allege any facts

13  whatsoever of any alleged pattern or practice of violating RESPA and thus states no

14  basis for §2605 relief.

15  Plaintiff's RESPA claim also fails because she does not sufficiently allege

16  any pecuniary damages. Merely alleging a RESPA violation based on a failure to

17  respond to a QWR does not state a viable cause of action. There must also be a

18  specific averment of proximately caused pecuniary damages.[4] Plaintiff does not

19  allege any specific pecuniary harm, but instead makes only an unsubstantiated

20  claim that he has "actual pecuniary damages" based on statutory damages, civil

21  liability, and attorneys' fees." (Compl., ¶99.) These damages, to the extent they

22  exist, were obviously caused by Plaintiff's defaulting on her mortgage, not by the

23  alleged failure to respond to the QWR. Therefore, the claim fails.

24  
_____

25  [4]   *Reynoso v. Paul Fin., LLC*, 2009 WL 3833298, *7 (N.D. Cal. 2009) ("section 2605(f) [of RESPA] require[s] a showing of pecuniary damages in order to state a claim" and mere

26  "conclusory" allegation is insufficient); *Singh v. Wash. Mut. Bank*, 2009 WL 2588885, *5 (N.D. Cal. 2009) (dismissing RESPA claim because the plaintiffs failed to allege any actual

27  damages resulting from the failure to respond to their QWR); *Swanson v. EMC Mortg. Corp.*, 2009 WL 3627925, *7 (E.D. Cal. 2009); *Hutchinson v. Del. Sav. Bank, FSB*, 410 F.Supp.2d 374

28  (D.N.J. 2006) ("alleging a breach of RESPA duties alone does not state a claim under RESPA," the plaintiff must allege "that the breach resulted in actual damages.").

1  VII.  **PLAINTIFF HAS NO CLAIM UNDER BUS. & PROF. CODE**

2      **SECTION 17200**

3      A.    **Plaintiff States No Underlying Violation Of Law**

4          An underlying violation of law is required to maintain a cause of action for

5  violation of §17200. *Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178

6  (2001); *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal.App.4th 654, 673 (1998).

7  Thus, a defense to the predicate claim is a defense to the alleged violation. *Id.*

8          Plaintiff's fifth cause of action for unfair business practices seeks recovery

9  based primarily on Defendants' alleged violations of the TILA, FDCPA and

10  RESPA. (Compl., ¶¶106-108.) As addressed above, Plaintiff's claims under these

11  statutes fail as a matter of law.

12          Plaintiff also makes passing references to California *Civ. Code* §1095 and

13  California *Penal Code* §532(f)(a)(4). But, Plaintiff does not provide even the most

14  rudimentary facts to support a violation of those statutes.

15          Therefore, as Plaintiff's antecedent claims fail, so does Plaintiff's UCL

16  claim.

17      B.    **Plaintiffs Cannot Allege Unfair Conduct under the UCL**

18          A business practice is considered "unfair" if it threatens to violate or violates

19  the policy or spirit of an anti-trust law or otherwise significantly threatens or harms

20  competition. *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone

21  Co.*, 20 Cal.4th 163, 187 (1999). "[A]ny finding of unfairness to competitors under

22  section 17200 [must] be tethered to some legislatively declared policy or proof of

23  some actual or threatened impact on competition. We thus adopt the following test:

24  When a plaintiff who claims to have suffered injury from a direct competitor's

25  "unfair" act or practice invokes Section 17200, the word "unfair" in that section

26  means conduct that threatens an incipient violation of an antitrust law, or violates

27  the policy or spirit of one of those laws because its effects are comparable to or the

28  same as a violation of the law, or otherwise significantly threatens or harms

1  competition." *Id.* at 186-187.   Plaintiff fails to plead any facts regarding public

2  policy or threats to the public.  Instead, Plaintiff merely sets forth vague and

3  conclusory allegations regarding unfair conduct.

4      Furthermore, if the customer has a meaningful market choice, *i.e.*, other

5  venders that offer reasonably available alternatives to the lender's product, the

6  challenged procedures cannot be considered "unfair." *Dean Witter Reynolds,*

7  *Inc. v. Sup. Ct.* (1989) 211 Cal.App.3d 758.  Here, there were, and are, a multitude

8  of other lenders making loans on comparable terms and conditions.  There was no

9  requirement for Plaintiff to borrower money from Wells Fargo.

10     **C.     Plaintiffs Fail to Allege Fraudulent Conduct under the UCL**

11     A business practice is considered "fraudulent" within the meaning of section

12  17200 if the plaintiff is "likely to be deceived." *Committee on Children's*

13  *Television v. General Foods Corp.* (1983) 35 Cal.3d 197, 211.  Furthermore, if the

14  UCL claim "is said to be 'grounded in fraud' ... the pleading of that claim as a

15  whole must satisfy the particularity requirement of Rule 9(b)." *Kearn v. Ford*

16  *Motor Company*, 567 F.3d 1120, 1127 (*quoting Vess v. Ciba-Geigy Corp. USA*, 317

17  F.3d 1097, 1103-1104 (9th Cir. 2003).

18     Plaintiff neither asserts a fraud cause of action nor states facts sufficient to

19  support a fraud accusation under Rule 9.  Therefore, Plaintiff's UCL claim fails.

20  **VIII. PLAINTIFF'S CONTRACT CLAIMS FAIL**

21     Plaintiff's sixth (breach of contract) and seventh (breach of the covenant of

22  good faith and fair dealing) causes of action are based on Defendants' alleged

23  misapplication of Plaintiff's payments under the terms of the Loan and Deed of

24  Trust.  (Compl., ¶¶140, 150.)  This claim fails.

25     First, in order to prevail on his cause of action for breach of contract, a

26  plaintiff must show the existence of a valid contract, her performance or excuse for

27  non-performance under the contract, defendant's breach, and resulting damage.

28  *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104.

1   Plaintiff cannot satisfy these elements.  Specifically, while Plaintiff claims she

2   "performed all of her conditions in the Deed of Trust, including timely paying her

3   mortgage to Defendants" (Compl., ¶139), *she openly admits to having defaulted*

4   *on the Loan in 2008* and initiating modification discussions.  (Compl., ¶28.)  Thus,

5   Defendants cannot misapply payments as no payments were made.  Moreover,

6   Plaintiff clearly was not performing under the Loan terms and identifies no excuse

7   for her nonperformance.

8        Second, "it is universally recognized [that] the scope of conduct prohibited

9   by the covenant of good faith is circumscribed by the purposes and express terms of

10   the contract."  *Carma Developers (Cal.), Inc. v. Marathon Development California,*

11   *Inc.*, 2 Cal.4th 342, 373 (1992).  The implied covenant "cannot impose substantive

12   duties or limits on the contracting parties beyond those incorporated in the specific

13   terms of their agreement."  *Agosta v. Astor*, 120 Cal.App.4th 596, 607 (2004);

14   accord: *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349-50 (2000).  In particular, the

15   implied covenant cannot be stretched to prohibit a party from doing that which the

16   agreement expressly permits.  *Carma Developers (Cal.), Inc.*, 2 Cal.4th at 374-75.

17        Plaintiff has not made a payment on the Loan since 2008.  (Compl.,

18   ¶28.)  Therefore, under the terms of the Deed of Trust, Defendants are authorized to

19   pursue nonjudicial foreclosure.  (Deed of Trust, RJN, Ex. B.)

20        Finally, tort recovery for breach of the covenant [of good faith and fair

21   dealing] is available only in limited circumstances, generally involving a special

22   relationship between the contracting parties, such as the relationship between an

23   insured and its insurer."  *Bionghi v. Metro. Water Dist.*, 70 Cal.App.4th 1358, 1370

24   (1999); *see Mitsui Mfrs. Bank v. Super. Ct.*, 212 Cal.App.3d 726, 729 (1989).

25   California courts do not invoke a special relationship between a lender and

26   borrower.  *See Kim v. Sumitomo Bank*, 17 Cal.App.4th 974, 979, 21 Cal.Rptr.2d

27   834 (1993) ("the relationship of a bank-commercial borrower does not constitute a

28   special relationship for the purposes of the covenant of good faith and fair

1   dealing").  Thus, no special relationship exists between Plaintiff and Defendants to
2   warrant tort recovery.  (See Compl.)

3   **IX.    CONCLUSION**

4       Based on the forgoing, Defendants respectfully request that the Court grant
5   their motion to dismiss with prejudice.

6

7   DATED:  November 14, 2011          SEVERSON & WERSON
8                                     A Professional Corporation

9

10                               By: */s/Jarlath M. Curra II*
11                                   SUZANNE M. HANKINS
                                 JARLATH M. CURRAN
12                                   Attorneys for Defendants
13                                   WELLS FARGO BANK, N.A.
                                 (erroneously sued as Wells Fargo
14                                   Home Mortgage) and U.S. BANK
                                 NATIONAL ASSOCIATION, as
15                                   Trustee for Citigroup Mortgage
                                 Loan Trust Inc., Mortgage Pass-
16                                   Through Certificates, Series 2006-
                                 AR9

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Irvine, California. My business address is Severson & Werson, 19100 Von Karman Avenue, Suite 700, Irvine, California 92612.

On the date below I served the within document(s) described as: **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action:

☐ by placing ☐ the original ☐ true copy(ies) thereof enclosed in sealed envelope(s) ☐ addressed as follows: ☐ address as stated on the attached mailing list.

Deborah P. Gutierrez, Esq.            Attorneys for plaintiff MARGARET
Gordon F. Dickson, Esq.               S. WISE
PROSPER LAW GROUP LLP
6100 Center Drive, Suite 1050
Los Angeles CA 90045

☐ **BY FEDERAL EXPRESS** - by depositing copies of the above document(s) in a box or other facility regularly maintained by Federal Express with delivery fees paid or provided for.

☐ **BY HAND** - I caused an enveloped to be delivered by hand to the addressee(s) as follows.

☒ **(BY ELECTRONIC SERVICE)** Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☒ **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 14, 2011, at Irvine, California.

By: _____
LINDA D. OWEN