1  **PROSPER LAW GROUP, LLP**
   Gordon F. Dickson, Esq. SBN 136857
2  Deborah P. Gutierrez, Esq. SBN 240383
   Michael E. Thompson, Esq. SBN 266275
3  6100 Center Drive, Suite 1050
   Los Angeles, CA 90045
4  Telephone:  (310) 893-6200
   Facsimile:  (310) 988-2930
5  E-mail:     Deborah@prosperlaw.com

6  Attorneys for Plaintiff,
   Margaret Wise
7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11 MARGARET S. WISE, an individual,          **CASE NO.:  CV11-8586 SJO (PJWx)**

12

13            Plaintiff,

14              vs.                           **PLAINTIFF'S OPPOSITION TO**
                                              **DEFENDANTS' WELLS FARGO**
15 WELLS FARGO BANK, N.A.; U.S.              **BANK, N.A. AND US BANK'S**
   BANK, N.A. AS TRUSTEE FOR                 **MOTION TO DISMISS FIRST**
16 CITIGROUP MORTGAGE LOAN                   **AMENDED COMPLAINT**
   TRUST, INC., MORTGAGE PASS-
17 THROUGH CERTIFICATES, SERIES
   2006-AR9; and Does 1 – 10, inclusive,     Date: February 13, 2012
18                                            Time: 11:00 Am
              Defendants.                     Courtroom: 2
19                                            Judge: James S. Otero

20

21

22

23

24

25

26

27

28
                                    1
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK, N.A. AND US BANK'S MOTION**
**TO DISMISS FIRST AMENDED COMPLAINT**

1       Plaintiff Margaret Wise, ("Plaintiff") by and through her attorneys of record

2   hereby opposes Defendants Wells Fargo Bank, N.A. (hereinafter "**Wells Fargo**") and

3   U.S. Bank, N.A. (hereinafter "**U.S. Bank**") (collectively "Defendants") Motion to

4   Dismiss Plaintiff's First Amended Complaint, pursuant to Federal Rule of Civil

5   Procedure 12(b)(6).  This opposition is based on all the papers on file with the Court,

6   the arguments set forth, and any arguments made by Plaintiff's counsel at the hearing

7   currently scheduled for this matter.

8

9                                                           Respectfully submitted,

10

11   Dated:        January 23, 2012               PROSPER LAW GROUP, LLP

12

13                                       By:    _/s/ Deborah P. Gutierrez_____

14                                              Gordon F. Dickson
                                                Deborah P. Gutierrez
15                                              Michael E. Thompson
                                                Attorneys for Plaintiff,
16                                              Margaret Wise

17

18

19

20

21

22

23

24

25

26

27

28
                                              2
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK, N.A. AND US BANK'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................. 1

II.     STATEMENT OF FACTS ............................................................... 1

III.    STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL
        PROCEDURE 12(b)(6) ................................................................... 3

IV.     LEGAL ARGUMENTS..................................................................... 4

        A.    Plaintiff Has Alleged an Actual Controversy Among the Parties
              Sufficient to Maintain a Cause of Action for Declaratory Relief ........ 4

              1.    The Purported Assignment To U.S. Bank, as Trustee Of The
                    Citigroup Trust, is Invalid and Unenforceable........................... 4

                    a.    New York Trust Law Requires Strict Compliance With
                          the Terms of Governing Trust Agreement.................4

                    b.    The Underlying Reasons For the Technical
                          Requirements of the PSA.......................................8

              2.    Defendants Misconstrue Plaintiff's Allegations ........................ 9

              3.    Defendants Contentions are Contradicted by Their Own
                    Documents............................................................................. 10

              4.    Plaintiff's Challenge to U.S. Bank's Authority is Proper........ 11

              5.    Plaintiff Is Not Required to Tender.......................................... 14

        B.    Plaintiff Has Sufficiently Alleged a Cause of Action for Negligence 15

        C.    Plaintiff Has Sufficiently Plead that Defendants are "Debt
              Collectors" Under the Fair Debt Collection Practices Act ("FDCPA")16

        D.    Plaintiff Is Entitled to Statutory Damages Under the Truth in
              Lending Act ("TILA") and Need Not Plead Actual Damages........... 17

i

F.   Plaintiff Has Sufficiently Alleged a Claim Under California Business and Professions Code Section 17200 ................................................. 21

H.   Plaintiff Has Sufficiently Plead Her Contract Claims........................ 23

  1.   Plaintiff Has Sufficiently Plead a Quasi-Contract Claim ........ 23

  2.   Plaintiff's Breach of Contract Claim Is In the Alternative and Is Adequately Pled ................................................................. 24

  3.   Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing............................................................ 24

I.   Defendants Violated California Civil Code Sections 2923.5 and 292425

V.   CONCLUSION.......................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Ansanelli v. JP Morgan Chase Bank, N.A.,*
   2011 WL 1134451 (N.D. Cal.)................................................................15, 16

*Bank of the West v. Sup. Ct.,*
   2 Cal.4th 1254 (1992)..................................................................................22

*Beall v. Quality Serv. Corp.,*
   No. 10-1900, 2011 WL 1044148 (S.D. Cal. Mar. 21, 2011) ........................18

*Bell Atlantic Corp. v. Twombly,*
   55 US 544 (2007) ..........................................................................................3

*Benham v. Aurora Loan Services,*
   2009 WL 2880232 (N.D. Cal. 2009).............................................................9

*Berryman v. Merit Property Management, Inc.,*
   152 Cal.App. 4th 1544 (2007)....................................................................21

*Brown v. Spohr,*
   180 N.Y. 201 (N.Y. 1904)............................................................................5

*Burgoyne v. James,*
   282 N.Y.S. 18 (1935) ....................................................................................4

*Cervantes v. City of San Diego,*
   5 F.3d 1273 (9th Cir. 1993)...........................................................................3

*Chasnik v. BAC Home Loans Servicing LP, et al.*
   No. CV 11-01324 DMG/JCGx, at *7 (C.D. Cal. Oct. 26, 2011)............18, 19

*Chazen v. Centennial Bank ,*
   61 Cal. App. 4th 532, (1998).......................................................................15

*Comunale v. Traders & General Ins. Co.,*
   50 Cal. 2d 654 (1958)..................................................................................24

*Conley v. Gibson,*

    355 U.S. 41 (1957) ................................................................................3

*Fontenot v. Wells Fargo Bank, N.A.,*

    198 Cal. App. 4th 256, (2011) ...................................................11, 12

*Foulkrod v. Wells Fargo Financial California Inc.,*

    No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31. 2011) ........................14

*Gilligan v. Jamco Dev. Corp.,*

    108 F.3d 246 (9th Cir. 1997) ..............................................................3

*Gomes v. Countrywide,*

    192 Cal. App. 4th 1149 (2011) ...................................................11, 12

*Hartford Fire Ins. Co. v. California,*

    509 U.S. 764 (1993) ............................................................................3

*Hutchinson v. Del. Sav. Bank FSB,*

    410 F.Supp.2d 374 (D.N.J 2006) ........................................................20

*Ohlendorf v. Am. Home Mortg.,*

    No. Civ. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098 (E.D. Cal. March 31, 2010) ................................................................................................12

*In re Chalgren,*

    No. 09-56729/Adv. Proc. No. 10-5057 (N.D. Cal. Bankr. Oct. 7, 2011) .............19, 20

*In re Estate of Plotkin,*

    290 N.Y.S. 2d 46, (N.Y. Sur. 1968) ....................................................5

*Kunert v. Mission Financial Services Corp.,*

    1 Cal.Rptr.3d 589 (2003) .................................................................21

*Lane v. Vitek Real Estate Industries Group,*

    713 F.Supp.2d 1092 (E.D. Cal. 2010) ..................................................9

*Lona v. Citibank, N.A.,*

    2011 WL 6391584, (Cal. App. 6 Dist. Dec. 21, 2011) ............................13

*Louiseau v. VISA USA Inc.,*

    WL 4542896 (S.D. Cal. 2010) ...........................................................23

*Luciw v. JPMorgan, N.A.,*
    2010 WL 3958715, (N.D. Cal. 2010)................................................20

*Mayfield v. First Nat'l Bank of Chattanooga,*
    137 F. 2d 1013 (6th Cir. 1943)...................................................5

*McKell v. Washington Mut., Inc.,*
    142 Cal. App. 4th 1457 (2006)...................................................23

*Moeller v. Lien,*
    25 Cal. App. 4th 822 (1994)......................................................13

*Onofrio v. Rice,*
    55 Cal. App. 4th 413 (1997));............................................13, 14, 15

*Osei v. Countrywide Home Loans,*
    692 F.Supp.2d 1240 (2010)......................................................15

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987)......................................................3

*Sacchi v. Mortgage Electronic Registration Systems, Inc.,*
    No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal. June 24, 2011.............7, 13, 14

*Scheuer v. Rhodes,*
    416 U.S. 232, (1974) ...............................................................1, 3

*Tamburri v. Suntrust Mortgage, Inc.,*
    2011 WL 6294472, (N.D. Cal. Dec. 15, 2011......................................7, 10, 24

*Teselle v. McLoughlin,*
    173 Cal. App. 4th 156 (2009).....................................................22

*Vogan v. Wells Fargo Bank, N.A.,*
    No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, *7-8 (E.D. Cal. Nov. 17, 2011)
    ...............................................................................11, 13, 14

*Waller v. Truck Ins. Exchange, Inc.,*
    11 Cal.4th 1, 36 Cal.Rptr.2d 370 P.2d 619 (1995).................................24

*Yulaeva v. Greenpoint Mortg. Funding, Inc.,*
   No. 09-cv-1504, 2009 WL 2880393 (E.D. Cal. 2009)........................................20

**Statutes**

12 U.S.C. § 2605(e)(1)(b)........................................................................................25

15 U.S.C. § 1640(a)...........................................................................................22, 23

15 U.S.C. § 1640(a)(2)(A)(iv)...............................................................................23

15 U.S.C. § 1641(g)................................................................................................23

15 U.S.C § 1641(g)(1)............................................................................................24

15 U.S.C. § 1692a(6).............................................................................................21

15 U.S.C. section 1638..........................................................................................24

§ 1640(a)(1)...........................................................................................................23

1640(a)(2)(A)(iv)...................................................................................................23

**Other Authorities**

Cal. Civ. Code section 2924...................................................................................18

Cal. Civ. Code section 2924(a)(1).........................................................................18

Cal. Civ. Code section 3275...................................................................................18

Cal. Civil Code § 2923.5..................................................................................29, 30

California Business and Professions Code Section 17200 ...............................25, 26

Fair Debt Collection Practices Act ("FDCPA") ...............................................21, 26

The Helping Families Save Their Homes Act of 2009 ..........................................24

<u>Oversight Report Examining the Consequences of Mortgage Irregularities for Financial
   Stability and Foreclosure Mitigation</u>..............................................................10

Real Estate Mortgage Investment Conduit .............................................................13

REMIC ...................................................................................................................13

RESPA................................................................................................................25, 26

section 1641(g) from the U.S. Code.......................................................................24

Truth in Lending Act ("TILA") ......................................................................22, 23

U.S. Internal Revenue Code...................................................................................13

Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.) ................27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................................ 8, 21

Rule 12(b)(6) ................................................................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Through the instant lawsuit, Plaintiff Margaret Wise (hereinafter "Ms. Wise" or "Plaintiff") will establish that Defendants Wells Fargo Bank, N.A. (hereinafter "**Wells Fargo**" in its capacity as originating lender and "**WFHM**" in its capacity as purported mortgage servicer) and U.S. Bank, N.A. (hereinafter "**U.S. Bank**") as Trustee for Citigroup Mortgage Loan Trust, Inc., Mortgage Pass-through Certificates, Series 2006-AR9 (hereinafter "**Citigroup Trust**") (in its capacity as purported assignee of Plaintiff's Deed of Trust) (collectively "Defendants") are not her true creditors and as such have no legal, equitable, or pecuniary right in the debt obligation secured by real property located at 2009 Ernest Avenue, Redondo Beach, California 90278. (the "Property").

Plaintiff has sufficiently pled both plausible factual allegations, as well as legal claims, to enable her First Amended Complaint to move forward.  This is not the phase in litigation to weigh the merits of the case.  In reviewing the sufficiency of the claims asserted, the issue *is not* whether Plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims asserted. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.   STATEMENT OF FACTS

On June 26, 2006, Plaintiff executed a promissory note ("Note") in favor of Wells Fargo, secured by a deed of trust ("Deed of Trust" or "Mortgage") for the finance of the purchase of her home.  (First Amended Complaint ("FAC") ¶ 1.)  Shortly after the origination of Plaintiff's debt obligation, the originating lender sold the debt obligation, although it is currently unknown to whom it was sold or whether the Note and Deed of Trust were assigned to this entity. (FAC ¶ 16.)  Plaintiff has learned that her Note and Deed of Trust were never validly assigned to the Citigroup Trust.  Specifically, Plaintiff alleges that there was not compliance with the Citigroup Trust agreement (the "Pooling

1  and Servicing Agreement" or "PSA"), the consequence of which is that the Note and

2  Mortgage were not, and are not, part of the trust res.  (FAC ¶¶ 17, 23-24.)

3        Plaintiff alleges that in order for the Note and Mortgage to be a part of Citigroup

4  Trust's trust res, the Note must have been assigned to the Sponsor, Depositor, and U.S.

5  Bank, as trustee for the Citigroup Trust, before the "Closing Date" of the Citigroup

6  Trust.  (FAC ¶ 28.)   Pursuant to the Trust Agreement, all notes and mortgages that were

7  to be a part of the Citigroup Trust  had to have been properly endorsed, transferred,

8  accepted, and deposited with the Citigroup Trust (or its custodian) on or before

9  November 30, 2006, the Closing Date of the Citigroup Trust.  (FAC ¶ 23.)  Instead, an

10  "Assignment of Deed of Trust," (hereinafter the purported "Assignment") which

11  purports that Wells Fargo "hereby grants, assigns, and transfers" the Deed of Trust to

12  U.S. Bank, is dated July 19, 2011, almost five years after the Citigroup Trust's Closing

13  Date.  (FAC ¶ 29, Ex. D.)

14        On August 10, 2011, in direct contradiction to the July 19, 2011, Assignment,

15  First American Trustee Servicing Solutions, LLC (hereinafter "First American")

16  recorded a Notice of Default which identified Wells Fargo, **not U.S. Bank**, as the party

17  to contact to "find out the amount you must pay, or to arrange for payment to stop the

18  foreclosure, or if your property is in foreclosure for any other reason." [1]  (FAC, Ex. E.)

19  Further contradicting the purported Assignment, on August 11, 2011, First American

20  sent Plaintiff a letter (the "First American Letter") expressly identifying Wells Fargo,

21  **not U.S. Bank**, as the "current creditor to whom the debt is owed."  (FAC ¶ 28, Ex. F.)

22        On August 21, 2011, Ms. Wise sent WFHM a Qualified Written Request

23  ("QWR") in which she requested that WFHM provide "the name, address, and phone

24  number of the bank or investor that owns my mortgage."  (FAC ¶ 31, Ex. G.)  WFHM

25  failed to provide any response whatsoever.  (FAC ¶ 31.)

26  ──────────────

27  [1] The Motion asserts that the Notice of Default was recorded on March 9, 2010.
(Motion, p. 2.)  This is not so.  The Notice of Default is dated August 5, 2011, and was

28  recorded August 10, 2011.  This is after the purported Assignment was executed.

2

Plaintiff has never, and does not, dispute that a debt obligation exists. (FAC ¶ 33.) However, Plaintiff does dispute that Defendants have a valid security interest under the Deed of Trust such that they can enforce this debt by collecting payment, declaring a default, or otherwise enforcing the Deed of Trust.

## III.  STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Motions to dismiss for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) are viewed with disfavor, and, accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The standard for dismissal under Rule 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added). The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief in the complaint. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *See, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).* It is *not* a procedure for resolving a contest about the facts or the merits of the case. In reviewing the sufficiency of the complaint, the issue is not whether the plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims asserted. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, more recently, the U.S. Supreme Court has held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, would "state a claim

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 55 US 544

2   (2007).

3   //

4

5   **IV.   LEGAL ARGUMENTS**

6          **A.   Plaintiff Has Alleged an Actual Controversy Among the Parties**

7                **Sufficient to Maintain a Cause of Action for Declaratory Relief**

8          Defendants' recitation of the First Amended Complaint misstates Plaintiff's

9   claims.  This Opposition seeks to clarify the misstatements.  As an initial matter, the

10  foundation of Plaintiff's pleading is a request that the Court determine the rights and

11  obligations of the parties relative to the Property.  Section 2201(a) of Title 28 of the

12  United States Code expressly permits a party to bring a cause of action for Declaratory

13  Relief:  "In a case of actual controversy within its jurisdiction, ... any court of the

14  United States, upon the filing of an appropriate pleading, may declare the rights and

15  other legal relations of any interested party seeking such declaration, whether or not

16  further relief is or could be sought."

17              **1.   The Purported Assignment To U.S. Bank, as Trustee Of The**

18                   **Citigroup Trust, is Invalid and Unenforceable**

19                   **a.   New York Trust Law Requires Strict Compliance With the**

20                        **Terms of Governing Trust Agreement**

21         Plaintiff's Note was executed in favor of Wells Fargo.  Since neither U.S. Bank

22  nor the Citigroup Trust was the originator of the mortgage, any purported rights over

23  Plaintiff's debt obligation must be pursuant to a valid assignment or transfer of the Note

24  to the Trustee of the Citigroup Trust.

25         The Citigroup Trust is a special purpose vehicle created by a document called a

26  "Pooling and Servicing Agreement" ("PSA").  The PSA is a complex and voluminous

27  document, which in addition to creating the Trust, also defines the rights, duties and

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT**

1   obligations of the parties to the Trust Agreement.  The Citigroup Trust is governed by

2   New York law.  (FAC ¶ 17.)  Thus, New York's common law trust principles, which are

3   well-settled, are relevant to the analysis of Plaintiff's claims.[2]

4          Under New York law, for a trust to be valid, there are four essential elements:  (1)

5   a designated beneficiary; (2) a designated trustee who is not the beneficiary; (3) a fund

6   or other property sufficiently designated or identified to enable title thereto to pass to the

7   trustee; and (4) actual delivery or legal assignment of the property to the trustee, with

8   the intention of passing legal title to the trustee.  *Brown v. Spohr*, 180 N.Y. 201, 209-210

9   (N.Y. 1904).  Plaintiff alleges that with respect to her Loan, there was no actual delivery

10  or valid assignment of her Note to U.S. Bank.  (FAC ¶¶ 16-17.)  Under New York law,

11  without a **valid** delivery of the asset in question to the trust, there are no rights conferred

12  in the trustee under the common law.  Thus, if the trust fails to acquire property, then

13  there is no trust over that property that may be enforced.

14         Additionally, **where the method of transfer is set forth in the Trust**

15  **instrument, it is not subject to any variance or exception**.  NY Est. Powers & Trust §

16  7-2.4 ("If the trust is expressed in the instrument creating the estate of the trustee,  every

17  sale,  conveyance  or  other  act  of  the  trustee  in contravention of the trust, except as

18  authorized by this article and  by any other provision of law, is void.").

19         Congress has recognized the importance of strict compliance with trust

20  agreements and New York Trust Law.  Specifically, the bipartisan Congressional

21  Oversight Panel observed, "New York trust law requires strict compliance with the trust

22  documents; any transaction by the trust that is in contravention of the trust documents is

23  void, meaning that the transfer cannot actually take place as a matter of law.  Therefore,

24  _____

25  [2] As early as 1935, in *Burgoyne v. James*, 282 N.Y.S. 18,21 (1935), the New York
    Supreme Court recognized that business trusts, also known as "Massachusetts trusts,"
    are deemed to be common law trusts.  *See also In re Estate of Plotkin,* 290 N.Y.S. 2d 46,
26  49 (N.Y. Sur. 1968) (characterizing common stock trust funds as "common Law
    trust[s]").  Other jurisdictions are in accord.  *See, e.g., Mayfield v. First Nat'l Bank of*
27  *Chattanooga*, 137 F. 2d 1013 (6th Cir. 1943) (applying common law trust principles to a
    pool of mortgage participation certificate holders).

28

1   if the transfer for the notes and mortgages did not comply with the PSA, the transfer

2   would be void, and the assets would not have been transferred to the trust." Congr.

3   Oversight Panel, <u>Oversight Report Examining the Consequences of Mortgage</u>

4   <u>Irregularities for Financial Stability and Foreclosure Mitigation</u>, at 19 (Nov. 16, 2010),

5   *available at* http://cop.senate.gov/reports/library/report-111610-cop.cfm (internal

6   footnote omitted) (hereinafter "Congressional Oversight Panel Report").

7          Defendants arguments in this regard fail.  Defendants argue that Plaintiff is not a

8   party to the PSA and therefore cannot challenge the purported Assignment.  (Motion, p.

9   5.)  But Plaintiff is not attempting to enforce the PSA or claim any benefits flowing

10   from the PSA.  Plaintiff is simply observing the legal effect of Defendants failure to

11   follow the PSA, which is that Plaintiff's Loan is not part of the Citigroup Trust as a

12   matter of law.  NY Est. Powers & Trust § 7-2.4.  Defendants also argue that Plaintiff

13   specifically agreed in the Deed of Trust that Plaintiff's Loan could be sold without prior

14   notice to Plaintiff.  (Motion, p. 5.)  This is irrelevant.  Plaintiff does not argue that the

15   purported assignment violated the Deed of Trust or that Plaintiff should have been given

16   prior notice of any purported assignment.  Plaintiff recognizes that Wells Fargo had the

17   power to assign Plaintiff's Loan, but that does not mean that the purported assignment is

18   effective.  Plaintiff challenges the purported assignment on the basis of its

19   noncompliance with the PSA, not the Deed of Trust.

20          Finally, Defendants argue that "the date of the assignment is irrelevant."  (Motion,

21   p. 5.)  Defendants further argue that "an assignment of the deed of trust need not be

22   recorded to be effective."  *Id.*  To the extent that Defendants argue that the date of

23   recordation of an assignment is of no effect, that argument is irrelevant.  Plaintiff's

24   claim is not that the purported assignment was **recorded** after the Closing Date, but

25   rather that it was **executed** after the Closing Date.  This is not a situation where an

26   assignment was executed in 2006 but not recorded until 2011.  Instead, the purported

27   Assignment was **executed** almost five years after the Closing Date.  (FAC ¶ 29, Ex. D.)

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

To the extent Defendants argue that the date of execution is irrelevant, that argument has been rejected:

> Defendants' argument to the contrary is astonishing.   They claim that "because recordation [of an Assignment of Deed of Trust] is not necessary [under California's non-judicial foreclosure process], the execution date of an 'Assignment of Deed of Trust' indicates nothing more than the date when it was determined that the transfer would be made party of the property's official title records.   Thus, *the recordation and execution date is inconsequential and in no way connotes that the DOT's beneficial interest was transferred at that precise time."*   Motion to Dismiss at 12-13.  Defendants cite no authority for this outlandish claim.  If the execution date of an Assignment of Deed of Trust is "inconsequential," and the document itself does not reveal *when* the assignment occurred, then how is one to determine whether (and *when*) the purported assignment was consummated?  How could one ever confirm whether the entity seeking to throw a homeowner out of his residence had the legal authority to do so?

*Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029, *9-10  (C.D. Cal. June 24, 2011) (permitting challenge to foreclosure where assignee acted under deed of trust, including purporting to substitute trustee, prior to execution date of assignment of deed of trust); *see also Tamburri v. Suntrust Mortgage, Inc.*, 2011 WL 6294472, *9-14 (N.D. Cal. Dec. 15, 2011) (citing *Sacchi* in permitting Plaintiff to proceed on wrongful foreclosure claim where entity identified in notice of default as beneficiary had not yet been assigned the deed of trust at the time of the notice of default).[3]

---

[3] The Assignment states that Wells Fargo "***hereby***" assigns the Loan to U.S. Bank. (FAC ¶ 29, Ex. D (emphasis added).)

7

b.    <u>**The Underlying Reasons For the Technical Requirements**</u>
<u>**of the PSA**</u>

The PSA sets forth a specific deadline, method and manner required to fund the Trust with assets. (FAC ¶¶ 23-24, Ex. C.)  The highly technical requirements of the PSA are relevant and cannot simply be ignored as prayed by Defendants, for the following reasons:  The Citigroup Trust is not a lender, bank or servicer; rather, it is a special purpose vehicle established as a Trust under New York law.  The Trust was created for the purpose of issuing securities to be sold to investors and using the proceeds to buy mortgage notes.  Since the securities were to be repaid by mortgage payments on the notes, the securities came to be known as "mortgage backed securities." The PSA specifies two purposes for the Trust:  1) to establish that the transfers of the mortgage notes are true sales that become bankruptcy remote, and 2) to meet the requirements of a Real Estate Mortgage Investment Conduit, or "REMIC" pursuant to the U.S. Internal Revenue Code.  *See* FAC, Exhibit C.

Securitization is the practice of pooling and selling contractual debt obligations ("receivables") such as residential mortgages, commercial mortgages, auto loans or credit card debt, to a specially-created entity, typically a trust.  The Citigroup Trust is a New York Corporate Trust formed to act as a Real Estate Mortgage Investment Conduits, or "REMICs," pursuant to the U.S. Internal Revenue Code.  REMICs are treated as pass-through vehicles for tax purposes and enjoy tax-free exemptions and bankruptcy remote protection.  The first benefit of a REMIC entity serves to ensure favorable tax treatment of the bank, the securitization trust, and the investors, ideally through the securitization trust having "pass-thru" tax status, meaning that the securitization trust is not taxed on its own income when it is paid on the receivables. The second is ensuring that the trust's assets are "bankruptcy remote," meaning that they are insulated from the claims of the bank's creditors.  This involves ensuring that the transfer of the receivables to the trust is a "true sale" and not a financing transaction.

1    While compliance with the PSA may be inconvenient and complex, Defendants

2  request that the Court disregard its obligations yet uphold its purported rights (to collect

3  payments and foreclose) is improper, unfair and unlawful.  Defendants cannot have it

4  both ways.  Certain benefits were conferred on Defendants and the Investors of the

5  Citigroup Trust.  Plaintiff does not seek to challenge those REMIC benefits or claim a

6  right to them.  Rather, Plaintiff simply seeks a declaration of the legally observable

7  consequences of Defendants' own choices.

8    **2.    Defendants Misconstrue Plaintiff's Allegations**

9    Defendants attempt to confuse the Court into interpreting Plaintiff's argument to

10  be simply that mortgages can never be securitized into a trust pool.  (Motion, pp. 4-5

11  ("'The argument that parties lose their interest in a loan when it is assigned to a trust

12  pool [has] been rejected by many district courts.").)  Defendants cite to two cases where

13  plaintiffs attempted to allege that securitization alone, without any of the defects alleged

14  by Plaintiff here, renders defendants unable to enforce mortgages.  In *Lane v. Vitek Real*

15  *Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010), "plaintiffs

16  contend[ed] that none of the defendants ha[d] the authority to foreclose because their

17  loan was packaged and resold in the secondary market, where it was put into a trust pool

18  and securitized."  Likewise, the plaintiff in *Benham v. Aurora Loan Services*, 2009 WL

19  2880232, at *4 (N.D. Cal. 2009), "argue[d], in broad terms, that Defendants sold

20  Plaintiff's loan to financial entities who pooled the loans, put them into trusts, and sold

21  securities based on them."  Neither case involved any allegation that a trust agreement or

22  trust law was violated.

23    Plaintiff does **not** dispute that her Loan would have been legitimately securitized

24  into the Citigroup Trust had Defendants followed the terms of the PSA and New York

25  trust law.  (FAC ¶ 17) ("In order for Plaintiff's Mortgage to be a part of the Citigroup

26  Trust, the entities involved were required to follow various agreements and established

27  laws, including the Trust Agreement that governed the creation of the Trust.")  Instead,

28

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   Plaintiff alleges that the attempted securitization failed because of multiple violations of

2   the PSA and New York trust law, resulting in no transfer of any beneficial interest in

3   Plaintiff's Loan to U.S. Bank.  (FAC ¶¶ 22-24.)  *Lane* and *Benham* are thus inapposite

4   as neither involves any alleged defects in the securitization process of the loans.

5   Defendants also argue, "[Plaintiff's] argument appears to be something to the

6   effect of, because the promissory note was allegedly not properly transferred to the

7   securitized trust, Plaintiff, who received $940,000 to purchase a house in Redondo

8   Beach, does not have to pay that money back to anyone."  (Motion, p.4 (internal

9   citations and emphasis omitted).)  This is a straw man argument that wholly ignores the

10  FAC: "Plaintiff does not dispute that she owes money on her mortgage obligation.

11  Rather, Plaintiff disputes the amount owed and seeks the Court's assistance in

12  determining who the true creditor is of her Note and Deed of Trust." (FAC ¶ 33.)

13  Finally, Defendants attempt to convert Plaintiff's claim into a "produce the note"

14  theory.  (Motion, p. 6-7.)  Plaintiff's argument is **not** that Defendants cannot foreclose

15  because they don't have the Note.  Rather, Defendants cannot foreclose because they

16  have no beneficial interest in the Deed of Trust.  (FAC ¶¶ 25-30.)  Such a challenge is

17  permitted under California law.  *Tamburri*, 2011 WL 6294472, at *9-14 ("[A] party may

18  not foreclose without the legal power to do so.").

### 3.    Defendants Contentions are Contradicted by Their Own Documents

21  While Defendants' arguments regarding Plaintiff's failed securitization

22  allegations fail for the reasons discussed above, Defendants' Motion also fails even if

23  the Court does not accept Plaintiff's failed securitization allegations.  That is, the very

24  documents that Defendants rely on contradict their preferred version of events.

25  According to Defendants, Wells Fargo assigned its beneficial interest in the Deed of

26  Trust to U.S. Bank via the Assignment on July 19, 2011.  (FAC ¶ 29, Ex. D.)  Accepting

27  this as true, then Wells Fargo had no beneficial interest in the Deed of Trust when the

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1  Notice of Default was recorded one month later on August 16, 2011.  (FAC ¶¶ 27, 30,

2  Ex. E.)  Yet, as the Notice of Default, together with the accompanying First American

3  Letter, identifies Wells Fargo as the beneficiary, the Notice of Default would therefore

4  be invalid.[4]  *Tamburri*, 2011 WL 6294472, at \*9-14 ("[A] party may not foreclose

5  without the legal power to do so.  Plaintiff alleges that the wrong parties issued the

6  Notice of Default.  At the 12(b)(6) stage, given the factual uncertainties underlying the

7  parties' arguments, Plaintiff's claim is sufficient to withstand a motion to dismiss.").

8      **4.**    **Plaintiff's Challenge to U.S. Bank's Authority is Proper**

9      Courts have recognized a borrower's right to bring claims challenging a

10  foreclosing party's interest under a deed of trust.  *See Vogan*, 2011 WL 5826016, at \*7;

11  *Schafer*, 2011 WL 2437267, at \*4; *Sacchi*, 2011 WL 2533029, at \*5 ("It is true, as

12  Defendants repeatedly assert, that California Civil Code § 2924, et seq. authorizes non-

13  judicial foreclosures in this state.  It is not the case, however, that the availability of a

14  nonjudicial foreclosure process somehow exempts lenders, trustees, beneficiaries,

15  servicers, and the numerous other (sometimes ephemeral) entities involved in dealing

16  with Plaintiffs from following the law." ).  Indeed, one of the very purposes of

17  California's nonjudicial foreclosure statutes is "to protect the debtor/trustor from

18  wrongful loss of the property." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th

19  256, 270 (2011) (internal quotations omitted).  Defendants' cannot hide behind the

20  nonjudicial statutory framework when they do not meet its most basic requirements.

21      Lenders have seized on the recent ruling in *Gomes v. Countrywide*, 192 Cal. App.

22  4th 1149 (2011), by straining the interpretation of its holding to mean that a homeowner

23  cannot challenge a foreclosure or her purported creditor's right to enforce the deed of

24  trust—under any circumstances. *Gomes* held that California Civil Code § 2924(a)(1)

25

---

26  [4] The purported beneficiary's role in initiating foreclosure is evident in the last
paragraph of the Notice of Default, which states, "[T]he present beneficiary under such

27  deed of trust . . . has elected and does hereby elect to cause the trust property to be sold
to satisfy the obligations secured thereby."  (FAC p. 116, Ex. E.)

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT**

1   does not "provide for a judicial action to determine whether the person initiating the

2   foreclosure process is indeed authorized." *Id.* at *1155. But the issue in *Gomes* was not

3   whether the wrong entity had initiated foreclosure; rather, the issue was whether the

4   company selling the property in the nonjudicial foreclosure sale (MERS) was authorized

5   to do so by the owner of the promissory note. *See id.* at 1155 (rejecting the argument

6   that a plaintiff may test whether the agent initiating the foreclosure has the authority to

7   do so; "[t]he recognition of the right to bring a lawsuit to determine a nominee's

8   authorization to proceed with foreclosure on behalf of the noteholder would

9   fundamentally undermine the nonjudicial nature of the process and introduce the

10  possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"). That

11  is, *Gomes* involved a challenge to whether an ***agent*** had the authorization of its

12  principal, who was the undisputed beneficiary under the deed of trust, to initiate

13  foreclosure. It was not, as here, a challenge to the ***principal***'s authority to foreclose.

14         Notably, the *Gomes* court distinguished a case cited by the plaintiff precisely

15  because, in that case, "the plaintiff alleged wrongful foreclosure on the grounds that

16  assignments of the deed of trust had been improperly backdated, and thus the wrong

17  party had initiated the foreclosure process. No such infirmity is alleged here." *Id.*

18  Thus, *Gomes* explicitly avoided the scenario pled here, in which "the plaintiff's

19  complaint identified a specific factual basis for alleging that the foreclosure was not

20  initiated by the correct party." *Id.* at 1156. *Gomes* is therefore inapposite.

21         In *Fontenot*, the court acknowledges this important distinction, noting *Gomes*

22  "concluded the 'comprehensive' statutory framework regulating nonjudicial foreclosure,

23  Civil Code sections 2924 through 2924k, did not require the agent of a beneficial owner,

24  such as MERS, to demonstrate that it was authorized by the owner before proceeding

25  with foreclosure, ***at least in the absence of a factual allegation suggesting the agent***

26  ***lacked authority***." 198 Cal. App. 4th, at 258.

27         Similarly, in *Ohlendorf v. Am. Home Mortg.*, No. Civ. S-09-2081 LKK/EFB,

28

1  2010 U.S. Dist. LEXIS 31098, at *21-24 (E.D. Cal. March 31, 2010), the court held

2  that, while "proof of possession of the note" is not necessary to "legally institute non-

3  judicial foreclosure proceedings against plaintiff," Plaintiff still had a viable claim for

4  wrongful foreclosure insofar as he argued that defendants "are not the proper parties to

5  foreclose." *Id.* at *22.

6      Here, Plaintiff's claims involve violations of the nonjudicial foreclosure statutes

7  because Plaintiff asserts specific factual allegations to contend that Defendants have no

8  beneficial interest in the Deed of Trust and thus have no power to foreclose. Plaintiff is

9  not alleging that lenders must prove their right to foreclose in a non-judicial foreclosure.

10  Rather, Plaintiff alleges that Defendants could not proceed with a lawful foreclosure

11  since they have no enforceable interest in the subject mortgage. Plaintiff has set forth a

12  series of specific factual allegations (violations of the PSA, fabricated assignments, and

13  violations of California foreclosure statutes) demonstrating Defendants are not the

14  correct parties authorized to foreclose. These allegations should not be overlooked.

15      Defendants cite to *Moeller v. Lien,* 25 Cal. App. 4th 822, 834 (1994), to suggest

16  that Plaintiff cannot add requirements to the nonjudicial foreclosure statutes.

17  Defendant's reliance on *Moeller* is misplaced. *Moeller* did not involve the specific

18  allegations challenging foreclosing party's authority to foreclose. The plaintiff in

19  *Moeller* sought to have the court include Cal. Civ. Code section 3275 as part of the

20  statutory foreclosure framework. Not surprisingly, the court rejected the plaintiff's

21  request to inject additional requirements into statutory foreclosure framework under Cal.

22  Civ. Code section 2924 et seq. *Id.* at 833-34.

23      Unlike *Moeller*, Plaintiff is not trying to inject additional requirements or other

24  statutory requirements into the existing statutory foreclosure framework. Plaintiff is

25  simply disputing that Defendants meet the most basic requirements set forth by the

26  foreclosure statute: that only the true beneficiary can exercise the power of sale. (*See*

27  Cal. Civ. Code section 2924(a)(1)). Plaintiff has alleged specific allegations showing

28

13

1    the Defendants are not the true beneficiaries and lack the power to exercise the power of

2    sale.  Defendants' reliance on California nonjudicial foreclosure statutes therefore fails,

3    just as they fail to comply with it.

### 5.    Plaintiff Is Not Required to Tender

5          Tender is not required when the action attacks the validity of the underlying debt

6    because the tender would constitute an affirmation of the debt.  *Lona v. Citibank, N.A.*,

7    2011 WL 6391584, *14-16 (Cal. App. 6 Dist. Dec. 21, 2011) (identifying four

8    exceptions to the tender rule); *Sacchi,* No. CV 11-1658 AHM, 2011 WL 2533029, at *9-

9    10 (*citing Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997)); *Stockton v. Newman*, 148

10   Cal. App. 2d 558, 564 (1957); s*ee also Vogan v. Wells Fargo Bank, N.A.*, No. 2:11-CV-

11   02098-JAM-KJN, 2011 WL 5826016, *7-8 (E.D. Cal. Nov. 17, 2011) (The Court holds

12   that the tender requirement does not apply to this case because Plaintiffs are challenging

13   the beneficial interest held by U.S. Bank in the deed of trust, not the procedural

14   sufficiency of the foreclosure itself."); *Foulkrod v. Wells Fargo Financial California*

15   *Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("…requiring plaintiff to

16   tender the amount due on his loan at this time would be illogical and inequitable given

17   that he disputes that Wells Fargo has any rights under the loan.").  In recognizing the

18   existence of exceptions to the tender rule, the *Sacchi* court articulated the inherent

19   unfairness in requiring a homeowner challenging the underlying debt to tender the full

20   amount due:

21          Defendants present this "tender" argument as though it were absolute and

22          without exception.  Such a rule, if it existed, would in many instances

23          eliminate any possibility of challenging wrongful foreclosures.  Most

24          homeowners, even those who are not in default, do not have ready access to

25          the funds necessary to pay off the balance of their mortgages.  Thus, if a

26          home is about to be taken away through error or malfeasance, a homeowner

27          would be unable to hold onto his most precious possession.  This would be a

28

14

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   grossly inequitable result and would permit entities to foreclose on

2   properties with impunity.

3   *Sacchi*, 2011 WL 2533029, at *9.  Here, Plaintiff alleges just such malfeasance.[5]  (FAC

4   ¶¶ 16-30.)

5       The court in *Vogan*, recognizing that requiring tender would be inappropriate in

6   just such a case as this, explained, "Plaintiffs are not saying that U.S. Bank failed to

7   follow the letter of California's statutory foreclosure law; they are claiming that U.S.

8   Bank did not have standing to foreclose in the first place.  Thus, relying on *Onofrio*,

9   requiring Plaintiffs to tender the full amount of the indebtedness to an entity, U.S. Bank,

10  that is allegedly not the beneficiary to the deed of trust in order to protect Plaintiffs'

11  interest in the Property would be inequitable." 2011 WL 5826016, at *7 (*citing Onofrio*,

12  55 Cal. App. 4th 413).  Plaintiff is therefore not required to tender.

13      **B.**    **<u>Plaintiff Has Sufficiently Alleged a Cause of Action for Negligence</u>**

14      Defendants owe Plaintiffs a duty of care because of their unconventional

15  relationship with Plaintiffs.  (FAC ¶¶ 57-58.)  Traditionally, a lender loaned money to a

16  borrower and serviced the loan.  Here, Defendants role is not "conventional" because it

17  is a bank acting as trustee for a trust and not the original lender who loaned or serviced

18  Plaintiffs' Loan.  The relationship between Defendants and Plaintiffs is not indicative of

19  a "conventional" lender-borrower relationship because U.S. Bank is not receiving the

20  benefits of Plaintiffs' Note and Mortgage.  Instead, Defendants hold Plaintiffs'

21  payments for the benefit of the certificate holders.  In addition, a bank may be liable in

22  negligence if it fails to discharge its contractual duties with reasonable care.  *Das v.*

23  *PHH, N.A.,* 186 Cal. App. 4th 727, at 741 (2010) citing *Chazen v. Centennial Bank* , 61

24  Cal. App. 4th 532, 537 (1998).  Additionally, "[a] lender may owe a duty of care

25  sounding in negligence to a borrower when the lender's activities exceed those of a

26
27  [5] Tender is also not required where a borrower has claims against the beneficiary that would offset the amount due. *Lona*, 2011 WL 6391584, at *14.  Plaintiff's FAC pleads numerous violations of state and federal law.
28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   conventional lender...." *Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1249

2   (2010).  One such instance is when the lender goes, "...beyond its role as a silent lender

3   and loan servicer to offer an opportunity to plaintiffs for loan modification and to

4   engage with them concerning [a] trial period plan." *Ansanelli v. JP Morgan Chase*

5   *Bank, N.A.*, 2011 WL 1134451 at *7 (N.D. Cal.).

6            In the instant case, Plaintiff's factual allegations demonstrate the efforts

7   Defendants undertook to assist and process numerous loan modification application

8   submissions from Plaintiff.  Specifically, in 2008, Plaintiff initiated loan modification

9   negotiations at the behest of Defendants.  (FAC ¶ 18.)  Each time Plaintiff attempted to

10  follow-up with Defendants regarding her loan modification application, she was

11  continually told to resubmit her documents.  *Id.*  After submitting her loan modification

12  packet many times over, Defendant WFHM denied Plaintiff's loan modifications due to

13  alleged non-responsiveness, not enough income and "outside investor guidelines." *Id.*

14           Accordingly, by way of their FAC, Plaintiff has alleged that Defendants went

15  beyond their role as a conventional, silent lender and loan servicer to offer an

16  opportunity to Plaintiff for loan modification.  "This is precisely beyond the domain of a

17  usual money lender." *See Anaselli* at *7 (internal quotations omitted).

18    **C.     Plaintiff Has Sufficiently Plead that Defendants are "Debt Collectors"**

19           **Under the Fair Debt Collection Practices Act ("FDCPA")**

20           Defendant U.S. Bank has violated the FDCPA in attempting to collect Plaintiff's

21  debt. Plaintiff has alleged that U.S. Bank's debt collection activities violated FDCPA

22  because Defendants illegally attempted to collect on Plaintiff's debt obligation when

23  they had no authority to do so.  (FAC ¶¶ 73-77.)

24           Defendants argue that U.S. Bank is not a "debt collector" as defined under the

25  FDCPA.  The FDCPA defines a debt collector as "any person who uses any

26  instrumentality of interstate commerce or the mails in any business the principal purpose

27  of which is the collection of any debts, or who regularly collects or attempts to collect,

28

1  directly or indirectly, debts owed or due or asserted to be owed or due another." 15

2  U.S.C. § 1692a(6).  Here, Defendant U.S. Bank does not purport to own Plaintiff's Loan

3  for its own benefit.  Rather, U.S. Bank is a trustee of a trust which purports to own

4  Plaintiff's debt.  U.S. Bank regularly collects debts on behalf of the investors of the

5  Citigroup Trust.  U.S. Bank is therefore a debt collector. 15 U.S.C. § 1692a(6).

6          Defendants argue that non-judicial foreclosure is not a debt collection activity

7  within the FDCPA.  Plaintiff does not allege that the foreclosure of her property

8  constitutes as the FDCP violation.  Instead, Plaintiff specifically alleges that Defendant

9  U.S. Bank, through its agent, WFHM, attempted to collect a debt by demanding

10  payments, attempting to collect payments and threatening to take action if payments

11  were not made.  (FAC ¶¶ 25, 69-71, 75.)

12      **D.   Plaintiff Is Entitled to Statutory Damages Under the Truth in Lending**

13          **Act ("TILA") and Need Not Plead Actual Damages**

14          Plaintiff has sufficiently pleaded a TILA violation because she has alleged that

15  Defendant U.S. Bank never provided her with any notice at any time, let alone the notice

16  and information required by the statute.  Defendants argue that Plaintiff's

17  communications with WFHM was a form of assistance in her attempt to save her home

18  despite their lack of notice.  (Motion, p. 10).  This is irrelevant. Communicating with

19  WFHM did not inform Plaintiff as to the identity of the purported beneficiary.  Indeed,

20  while Defendants note that Plaintiff was denied a loan modification due to alleged non-

21  responsiveness and lack of income, (Motion, p. 10.), Defendants conveniently omit that

22  another purported reason Plaintiff's loan modification was denied was that Plaintiff's

23  Loan was "outside investor guidelines." (FAC ¶ 18.)  Thus, only knowing the identity of

24  her servicer and not knowing the identity of the investor had a direct bearing on

25  Plaintiff's TILA claim and damages.

26

27

28

1    Defendants also argue that Plaintiff cannot maintain the TILA cause of action for

2  her alleged failure to specify "actual damages."  Defendants' argument is in direct

3  conflict with the plain language of 15 U.S.C. § 1640(a).  The statute is clear:

4          [A]ny creditor who fails to comply with any requirement imposed

5          under this part, including any requirement under … subsection (f) or

6          (g) of section 1641 of this title … with respect to any person is liable

7          to such person in an amount equal to ***the sum of—***

8          (1)    any actual damages sustained by such person as a result of the

9          failure;

10         (2)

11                 (A) …

12                 (iv)    in the case of an individual action relating to a credit

13                 transaction not under an open end credit plan that is secured by

14                 real property or a dwelling, not less than $400 or greater than

15                 $4,000

16         …

17         (3)    in the case of any successful action to enforce the foregoing

18         liability … the costs of the action, together with a reasonable

19         attorney's fee as determined by the court .

20  15 U.S.C. § 1640(a) (emphasis added).  Thus, in order to maintain a TILA cause of

21  action Plaintiff must allege either actual damages (§ 1640(a)(1)) **or** statutory damages (§

22  1640(a)(2)(A)(iv)).  *King v. Central Bank*, 18 Cal.3d 840, 848 (1997) (reversing trial

23  court's order sustaining demurrer and finding lender liable under 15 U.S.C. § 1640 for

24  "statutory penalties and attorney's fees"); *Chasnik v. BAC Home Loans Servicing LP, et

25  al*. No. CV 11-01324 DMG/JCGx, at *7 (C.D. Cal. Oct. 26, 2011) (denying motion to

26  dismiss claim for violation of 15 U.S.C. § 1641(g) and finding that "TILA also provides

27  for statutory damages…in an amount not less than $400 or greater than $4,000.  15

28

1   U.S.C. § 1640(a)(2)(A)(iv).  Thus, Plaintiff need not allege actual damages in order to

2   state a claim under TILA.").

3       Defendants cite to the recent case of *Beall v. Quality Serv. Corp.*, No. 10-1900,

4   2011 WL 1044148 (S.D. Cal. Mar. 21, 2011) to support their position that actual must

5   be alleged.  Not only was this case litigated by an in pro per plaintiff who apparently did

6   not plead damages or attorney's fees, but the court failed to analyze 15 U.S.C. §

7   1640(a)(2)(A)(iv), which makes clear that "Plaintiff need not allege actual damages in

8   order to state a claim under TILA."  *Chasnik*, No. CV 11-01324 DMG/JCGx, at *7.

9   Here, Ms. Wise has pleaded statutory damages and actual damages, including a cloud on

10  the title to her property such that she cannot refinance or sell her home, paying a creditor

11  who was not entitled to payment, and the overpayment and improper calculation of

12  interest.  (FAC ¶ 102.)  Plaintiff has also alleges she has incurred attorneys' fees.

13      Defendants also argue that Plaintiff's TILA claim fails because the omission was

14  not a material disclosure.  Defendants cite no authority for the proposition that a cause

15  of action under section 1641(g) requires a showing that the failed disclosures were

16  "material."  Instead, Defendants misdirect the Court to unrelated sections of TILA

17  which involve disclosures which must be made at the origination of the loan and a

18  borrower's right to rescind the loan.[6]  None of those sections or regulations relate to

19  section 1641(g).  Rather, the ***new*** subsection (g), added to § 131 of TILA by section 404

20  of The Helping Families Save Their Homes Act of 2009, specifically states, "***In***

21  ***addition to other disclosures required by this title***, not later than 30 days after the date

22  on which a mortgage loan is sold or otherwise transferred or assigned to a third party,

23  the creditor that is the new owner or assignee of the debt shall notify the borrower in

24  writing of such transfer, including [information identified in subsections (A) through

25  (E)]." 15 U.S.C § 1641(g)(1) (emphasis added).

26  _____

27  [6] Defendants cite to 15 U.S.C. section 1638, subsections (a)(2)-(6), (9).  (Motion, p. 12.)
    Curiously, Defendants skip over subsection (a)(1), which requires the disclosure of the

28  "identity of the creditor required to make disclosure."

1    Defendants essentially ask the Court to erase section 1641(g) from the U.S. Code.

2    As U.S. Bank made no disclosures at all, Defendants argument that none of the failed

3    disclosures were material is an argument that no claim can ever be based on section

4    1641(g). This would be an absurd result, and in fact many courts have recognized such

5    a cause of action. *See Chasnik*, No. CV 11-01324 DMG/JCGx, at *7.

6    **E.    Plaintiff Made a Proper Qualified Written Request under RESPA**

7    Defendants argue that Plaintiff's QWR did not seek information related to the

8    servicing of the loan. Plaintiff's QWR includes a request for "the name, address, and

9    phone number of the bank or investor that owns my mortgage." (FAC ¶ 31, Ex. G.)

10   Servicing means "receiving any scheduled periodic payments . . . and making the

11   payments of principal and interest." To whom the servicer makes these payments falls

12   within that definition. While the letter also contains aspects which dispute the validity of

13   the debt, that does not disqualify the letter as QWR. *In re Chalgren*, No. 09-56729/Adv.

14   Proc. No. 10-5057 (N.D. Cal. Bankr. Oct. 7, 2011) ("The Court notes that the statute

15   does not clearly state that a letter is not a Qualified Written [Request] if the letter

16   requests information both about the servicing of the loan and information not related to

17   the servicing of the loan."); *Luciw v. JPMorgan, N.A.*, 2010 WL 3958715, *3 (N.D. Cal.

18   2010). Defendants argue that Plaintiff's QWR is defective because it does not include a

19   statement of the reasons for the belief that the account is in error. RESPA "is written in

20   the disjunctive: a QWR may include a statement of the reason, *to the extent applicable*,

21   for the borrower's belief that the account is in error *or* provide sufficient detail to the

22   servicer *regarding other information sought*." *Luciw*, 2010 WL 3958715, *3; *In re

23   Chalgren*, No. 09-56729/Adv. Proc. No. 10-5057 ("This Court agrees with United States

24   District Judge Fogel's reading of 12 U.S.C. § 2605(e)(1)(b) found in [Luciw], which

25   holds that a letter can be a Qualified Written Request even if the letter does not state that

26   the account is in error.").

27

28

1    Finally, Defendants argue that Plaintiff failed to plead damages sufficient for a

2   claim under RESPA.  However, "courts have interpreted this requirement [to plead

3   pecuniary loss] liberally." *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, No. 09-cv-

4   1504, 2009 WL 2880393, *15 (E.D. Cal. 2009); *Rawlings v. Dovenmuehle Mortg., Inc.*,

5   64 F.Supp.2d 1156, 1164 (M.D.Ala. 1999) (recognizing costs incurred in preparing

6   correspondence and traveling to post office as actual damages under RESPA) ("The

7   court finds that both the statutory language of other sections of RESPA and RESPA's

8   legislative history demonstrate that Congress intended RESPA to be a remedial

9   consumer-protection statute."). Damage to one's credit is sufficient. *Hutchinson v. Del.*

10  *Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J 2006). Here, Plaintiff has alleged

11  pecuniary damages that include costs related to damage to Plaintiffs' credit. (FAC ¶¶

12  114-16.) Therefore, Plaintiff should be permitted to proceed on her RESPA claim.

13    **F.    Plaintiff Has Sufficiently Alleged a Claim Under California Business**

14        **and Professions Code Section 17200**

15    The Unfair Competition Law (UCL) is codified in California Business and

16  Professions Code section 17200.  The UCL prohibits any unlawful, unfair, or fraudulent

17  business practice.  The UCL is written in the disjunctive, which means a business act or

18  practice can be alleged to be all or any of the three prongs.  *Berryman v. Merit Property*

19  *Management, Inc.,* 152 Cal.App. 4th 1544, 1554 (2007).

20    Here, Plaintiff alleges Defendant U.S. Bank and/or its agent Defendant WFHM

21  have engaged in practices that are: 1) unfair, 2) likely to deceive, and 3) unlawful.  (FAC

22  ¶¶ 118-130.)  Defendants have collected Plaintiff's payments with no right to do so and

23  they attempted to cover of the defective transfer of her debt obligation.  In addition,

24  Plaintiff alleges, upon information and belief, that Defendants engage in deceptive

25  business practices with respect to mortgage loan servicing, assignments of notes and

26  deeds of trust, foreclosure of residential properties and related matters by demanding

27

28

1   and accepting payments for debts that are nonexistent and acting as beneficiaries and

2   mortgage servicers without the legal authority to do so. *Id.*

3   Furthermore, Plaintiff has sufficiently stated facts constituting unlawful business

4   practices. Ms. Wise has alleged that Defendants U.S. Bank and/or WFHM engaged in

5   an unlawful business practices by violating RESPA, FDCPA, and TILA. (FAC ¶¶ 66-

6   116.) Defendants' aforementioned conduct is unlawful and thus satisfies the "unlawful"

7   prong of Cal. Bus. and Prof. Code section 17200.

8   Also, it is against public policy and substantially injurious to consumers to engage

9   in an unfair debt collection practices as U.S. Bank did here. "[T]he Supreme Court has

10  not yet enunciated a legal test for unfairness in consumer actions under the unfair

11  competition law. The courts of appeal have variously suggested that a practice is unfair

12  if it offends an established public policy or is 'immoral, unethical, oppressive,

13  unscrupulous or substantially injurious to consumers,' and that unfairness is determined

14  by weighing the utility of the practice against the gravity of the harm to the consumer."

15  *Kunert v. Mission Financial Services Corp.*, 1 Cal.Rptr.3d 589, 607 (2003). The harm

16  to Plaintiff and consumers in general greatly outweighs Defendants' unfair actions.

17  U.S. Bank also engaged in "fraudulent" business practices. To state a claim for a

18  fraudulent business practice under section 17200, Plaintiff needs only demonstrate that

19  "members of the public are likely to be deceived." *Bank of the West v. Sup. Ct.*, 2

20  Cal.4th 1254, 1267 (1992) *citing* to *Chern v. Bank of America*, 15 Cal.3d 866, 876

21  (1976). U.S. Bank and/or WFHM's business pattern by collecting on a debt they have

22  no right to is extremely likely to deceive both Plaintiff and the public.

23  **G.    Plaintiffs Have Sufficiently Alleged an Accounting Claim**

24  A "fiduciary relationship between the parties is not required to state a cause of

25  action for accounting. All that is required is that some relationship exists that requires

26  an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). The

27  elements for a claim for accounting are: (1) fiduciary relationship or other

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  circumstances appropriate to the remedy; and (2) a balance due from the defendant to

2  the plaintiff that can only be ascertained by an accounting.  *See* Witkin, California

3  Procedure, Pleadings, section 776, p. 233 (4th ed.).

4       Defendants have held themselves out to be Plaintiff's creditors when in fact, as

5  discussed above, they have no right to collect any payments from Plaintiff.  (FAC ¶¶

6  148-149.)  Because Defendants have been enriched from this misrepresented

7  relationship, a balance is due to Plaintiff for payments received by U.S. Bank.[7]  Plaintiff

8  does not know and could not, without an accounting, know the balance due from

9  Defendants because of the structure of the misrepresented relationship.  Generally, a

10  homeowner makes mortgage payments to the mortgage servicer.  From there, the

11  servicer retains a portion of the payment as a servicing fee and distributes the proceeds

12  to the beneficiary.  Because the beneficiary can change without notice to the

13  homeowner, the homeowner is thus left in the dark as to whom each mortgage payment

14  is distributed.  An accounting is therefore needed because Plaintiff does not know when

15  U.S. Bank began receiving payments from the mortgage servicer.

16  //

17  **H.**   **Plaintiff Has Sufficiently Plead Her Contract Claims**

18       **1.**   **Plaintiff Has Sufficiently Plead a Quasi-Contract Claim**

19       Plaintiff has specifically alleged Defendants were unjustly enriched to Plaintiff's

20  detriment by accepting and retaining Plaintiff's payments for their own use without

21  acquiring an interest in Plaintiff's Note and Deed of Trust.  (FAC ¶ 62.)  "[I]t is clear

22  that California courts consistently permit a party to seek restitution under a variety of

23  theories, including quasi-contract and constructive trust."  *See McKell v. Washington*

24  *Mut., Inc.,* 142 Cal. App. 4th 1457, 1490 (2006).  *Louiseau v. VISA USA Inc.,* WL

---

[7] Defendants misconstrue Plaintiff's claim as "Plaintiff seeks an accounting of the amount of money Plaintiff owes on the loan." (Motion, p. 17.)  This is a misreading of the claim.  Plaintiff seeks an accounting of the money owed to Plaintiff by parties who were not her true creditors.  (FAC ¶¶ 148-150.)

1   4542896 (S.D. Cal. 2010).  Defendants attack Plaintiff's claim by asserting that

2   "Plaintiff has no basis to challenge U.S. Bank and Wells Fargo's authority to enforce the

3   loan terms." (Motion, p. 17.)  For the reasons discussed above, this attack fails.

4            **2.      Plaintiff's Breach of Contract Claim Is In the Alternative and Is**

5                     **Adequately Pled**

6            While she claims that there is no contractual relationship between her and

7   U.S. Bank or WFHM, U.S. Bank and WFHM assert rights under the Deed of Trust.

8   Accordingly, to the extent that a contractual relationship is determined by this Court to

9   exist, Plaintiff alleges that such Deed of Trust was breached, based upon the

10  misapplication of her payments pursuant to Section 2 of the contract.  Defendants

11  dispute that Plaintiff performed under the Deed of Trust because, they assert, "she

12  openly admits to having defaulted on the Loan in 2008." (Mot., p. 18.)  As Plaintiff's

13  claims are that Defendants failed to properly apply payments to Plaintiff's account, it is

14  only logical to read the FAC as alleging that Defendants' breach occurred at a time

15  when Plaintiff was making payments.  Defendants' factual assertion is thus misguided.

16           **3.      Plaintiff's Claim for Breach of the Implied Covenant of Good**

17                    **Faith and Fair Dealing**

18           There is an implied covenant of good faith and fair dealing in every contract that

19  neither party will do anything which will injure the right of the other to receive the

20  benefits of the agreement." *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654,

21  658 (1958) (internal citation omitted).  The implied covenant of good faith and fair

22  dealing supplements "the express contractual covenants, to prevent a contracting party

23  from engaging in conduct that frustrates the other party's rights to the benefits of the

24  agreement." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370,

25  900 P.2d 619 (1995).  One of the benefits of the contract was Plaintiff's right to gain

26  equity in the Property through mortgage payments that were to be applied according to

27  section 2 of the Deed of Trust.  Instead, Defendants practice of applying improper fees

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   and taxes to Plaintiff's Loan caused her principle balance to grow and to over-accrue

2   interest.  (FAC ¶¶ 167-168.)  Plaintiff has therefore alleged sufficient facts to support a

3   claim for breach of the implied covenant of good faith and fair dealing.

4        **I.**    <u>**Defendants Violated California Civil Code Sections 2923.5 and 2924**</u>

5        Defendants contend Plaintiff's claim of defective notice is "nonsensical as (1)

6   Plaintiff presumably received the notice of default as it is attached as exhibit E of her

7   complaint." (Motion, p. 19.)  Defendants ignore the plain requirement that a notice of

8   default cannot be filed "until 30 days after initial contact is made . . . or 30 days after

9   satisfying the due diligence requirement."  Cal. Civil Code § 2923.5.  Thus, the fact that

10  Plaintiff has a copy of the notice of default does not mean that proper notice was given.[8]

11  Plaintiff alleges proper notice was not given.  (FAC ¶ 176.)  This is sufficient to

12  maintain this claim.  *See Tamburri*, 2011 WL 6294472, at *5 ("Contrary to what

13  Suntrust contends, the fact of such a declaration (even one signed under oath), while

14  perhaps fulfilling one of the statutory requirements under § 2923.5, does not bar the

15  homeowner from disputing the facts asserted in the declaration.").  Defendants contend

16  that no plaintiff can maintain a cause of action under section 2923.5 because it does not

17  create a private right of action.  This is not so.  *See Id.*, at *5-6 (denying motion to

18  dismiss a claim for violation of California Civil Code section 2923.5).

19       Defendants next assert that they are excused from their duties under section

20  2923.5 because Plaintiff initiated loan modification efforts with WFHM three years

21  prior.  This is not so.  That Plaintiff initiated loan modification negotiations with WFHM

22  three years ago does not mean that the statute has been satisfied.  Nowhere does the

23  FAC allege that Defendants provided Plaintiff with the telephone number to the United

24  States Department of Housing and Urban Development.  *See* Cal. Civil Code §

25  2923.5(1)(2) (mandating that HUD information be provided to borrowers).  Nor does the

26  _____

27  [8] The First American Letter, which is dated August 11, 2011, indicates that a copy of the Notice of Default was enclosed.  (FAC Ex. F, p. 119.)  The Notice of Default was recorded one day earlier.

28

1   FAC allege that Plaintiff was asked "why can't you make your payments" or was told

2   about "the traditional ways that foreclosure can be avoided (e.g. deeds 'in lieu,'

3   workouts, or short sales)," as Defendants opine about.  (Motion, p. 20.)

4   **V.      CONCLUSION**

5          Plaintiff's First Amended Complaint is well-pled and allows the Court to infer

6   more than the mere possibility that Ms. Wise are entitled to relief; in fact, when the

7   Court accepts the factual allegations as true the Court can make a "reasonable inference"

8   that Defendants have engaged in misconduct for which they may be liable.  Although

9   Defendants do allege "factual" disputes in their Motion, this is not sufficient to support

10  this motion to dismiss.  Therefore, Plaintiff respectfully requests that the Court DENY

11  Defendant's Motion in its entirety.  To the extent the Court dismisses any claim or

12  allegation, Plaintiff requests the opportunity to amend her pleading to cure any

13  deficiency, add additional causes of action or rename any causes of action.

14

15  Dated:        January 23, 2012              **PROSPER LAW GROUP, LLP**

16

17                                   By:   /s/ Deborah P. Gutierrez

18                                         Gordon F. Dickson
                                           Deborah P. Gutierrez

19                                         Michael E. Thompson
                                           Attorneys for Plaintiffs,

20                                         Margaret S. Wise

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT**

## PROOF OF SERVICE

### Wise v. Wells Fargo Bank N.A., et al
### United States District Court Central District of California
### CV11-8586 SJO (PJWx)

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Prosper Law Group, LLP, Suite 1050, Los Angeles, California 90045. On January 23, 2012, I served the following document(s) by the method indicated below:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' WELLS FARGO BANK N.A AND U.S. BANK N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[X]   BY CM/ECF ELECTRONIC DELIVERY: In accordance with the registered case participants and in accordance with the procedures set forth at the United States District Court, Central District of California website www.ecf.cacd.uscourts.gov.

[ ]   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date on postage meter date is more than one day after the date of deposit in this Declaration.

[ ]   by placing the documents(s) listed above in sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

### [See attached Service List]

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on January 23, 2012, at Los Angeles, California.

Brittany Aughard

1

## Service List

### Wise v. Wells Fargo Bank N.A., et al
### United States District Court Central District of California
### CV11-8586 SJO (PJWx)

<u>Attorney for Defendants WELLS FARGO BANK, N.A.; U.S. BANK, N.A. AS
TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST, INC., MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2006-AR9</u>

Suzanne M. Hankins, Esq.
Jarlath M. Curran., Esq.
SERVESON and WERSON
A Professional Corporation
The Atrium
19100 Von Karman Ave., Suite 700
Irvine, CA 92612

Mark D. Lonergan, Esq.
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center Suite 2600
San Francisco, CA 94111

2

PROOF OF SERVICE